**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) | Case No. 1:15-cv-09025 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OH INSURANCE AGENCY and ALLSTATE INSURANCE COMPANY, | ) ) | Hon. Judge Jorge L. Alonso Hon. Mag. Judge Young B. Kim |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. NATURE OF THE CASE ................................................................................... 2

III. THE PROPOSED SETTLEMENT ................................................................... 3

    A. The Settlement Class ................................................................................ 3

    B. Settlement Relief ...................................................................................... 4

        1. Class Member Relief: Settlement Fund ...................................... 4

        2. Class Representative Incentive Award ........................................ 4

        3. Attorneys' Fees and Costs ........................................................... 5

        4. Remaining Funds ......................................................................... 5

    C. Notice and Settlement Administration ..................................................... 5

    D. Opt-Out and Objection Procedures .......................................................... 6

    E. Release ...................................................................................................... 6

IV. ARGUMENT ....................................................................................................... 7

    A. The Settlement Approval Process ............................................................ 7

    B. The Settlement Merits Preliminary Approval .......................................... 9

        1. The Proposed Settlement Provides Substantial Relief to the Settlement Class Particularly in Light of the Uncertainty of Prevailing on the Merits ............................................................. 9

            a. Benefits to the Class ......................................................... 9

            b. The Costs, Risks, and Delay Resulting from Continued Litigation Support Preliminary Approval ................................ 11

        2. The Settlement Resulted from Extensive, Arm's-Length Negotiations with Experienced Counsel, and Is Not the Result of Collusion. ................................................................................. 12

        3. The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval ............................... 13

    C. Plaintiff's Requested Fees Are Reasonable ............................................ 14

    D. The Requested Incentive Award Is Reasonable. ..................................... 15

    E. The Proposed Class Notice Satisfies Due Process ................................. 16

    F. The Court Should Grant Class Certification for Settlement Purposes .......... 19

        1. The Rule 23(a) Factors Are Met ............................................... 19

|  |  | a. | The Class Is Sufficiently Numerous and Joinder Is Impracticable.............................................................................19 |
|  |  | b. | The Settlement Class Shares Many Common Issues of Law and Fact........................................................................20 |
|  |  | c. | Plaintiff's Claims Are Typical of the Settlement Class. ...........21 |
|  |  | d. | Plaintiff and its Counsel Are Adequate Representatives. ........22 |
|  | 2. |  | The Rule 23(b)(3) Factors Are Satisfied. ................................................22 |
| G. |  |  | Scheduling a Final Approval Hearing Is Appropriate. ....................................23 |
| V. |  |  | CONCLUSION .............................................................................................24 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. Mar. 16, 2018) ........................................................................11, 12

*Aliano v. Joe Caputo & Sons – Algonquin, Inc.*,
  No. 09-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)........................................................12

*Am. Int'l Grp., Inc. v. ACE INA Holdings*,
  Nos. 07-2898, 09-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) .................................8, 13

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................................. 23

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ......................................................................................7, 8, 9, 10

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)...........................................................................................10

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014)........................................................................................... 22

*Brown v. Nucor Corp.*,
  576 F.3d 149 (4th Cir. 2009) ................................................................................................21

*Butler v. Sears, Roebuck & Co.*,
  702 F.3d 359 (7th Cir. 2012) ................................................................................................23

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ................................................................................................23

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (U.S. 2016)...................................................................................................12

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ..............................................................................................16

*F.C.V., Inc. v. Sterling Nat'l Bank*,
  652 F. Supp. 2d 928 (N.D. Ill. 2009) ....................................................................................17

*Gomez v. St. Vincent Health, Inc.*,
  649 F.3d 583 (7th Cir. 2011) ................................................................................................22

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ..................................................................................................19

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
  728 F.3d 682 (7th Cir. 2013 ..................................................................................21

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ....................................................................................7

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ..................................................................................21

*Kleen Products LLC v. Int'l Paper*,
  306 F.R.D. 585 (N.D. Ill. 2015) ............................................................................19

*Marcial v. Coronet Ins. Co.*,
  880 F.2d 954 (7th Cir. 1989) ..................................................................................20

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*,
  834 F. 2d 677 (7th Cir. 1987) ................................................................................14

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ..................................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ................................................................................................16

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ..................................................................................20

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ..................................................................................21

*Parko v. Shell Oil Co.*,
  739 F.3d 1083 (7th Cir. 2014) ................................................................................20

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ..................................................................................15

*Phillips Randolph Enters., LLC v. Rice Fields*,
  No. 06-4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007) ......................................12

*Pruitt v. City of Chicago*,
  472 F.3d 925 (7th Cir. 2006) ..................................................................................20

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ................................................................................21

*Schulte v. Fifth Third Bank,*
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................12

*Suchanek v. Sturm Foods, Inc.,*
  764 F.3d 750 (7th Cir. 2014) ......................................................................19, 20

*Synfuel Tech., Inc. v. DHL Express (USA), Inc.,*
  463 F.3d 646 (7th Cir. 2006) ................................................................1, 9, 10

*In re Synthroid Mktg. Litig.,*
  264 F.3d 712 (7th Cir. 2001) ...................................................................14

**Statutes**

47 U.S.C. § 227 ...................................................................................................2

47 U.S.C. § 227(b)(3) .......................................................................................21

**Rules**

Fed. R. Civ. P. 23 .........................................................................................9, 15

Fed. R. Civ. P. 23(a)(1) ..................................................................................20

Fed. R. Civ. P. 23(a)(2) ..................................................................................20

22

Fed. R. Civ. P. 23(e)(1) ..................................................................................16

Fed. R. Civ. P. 23(e)(2) ....................................................................................9

Fed. R. Civ. P. 23(e)(2)(C). ...........................................................................10

Fed. R. Civ. P. 23(e)(2)(D). ...........................................................................10

**Regulations**

47 C.F.R. § 64.1200(a)(1)(iii) ...........................................................................2

**Other Authorities**

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002) ...............7,89, 13

*Manual for Complex Litig.* § 21.633 (4th ed. 2004) ....................................8, 16

Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010) ....................19

## I.    INTRODUCTION

After three-and-half years of litigation, dispositive motions, discovery motions, extensive discovery efforts,  and a day-long mediation with a nationally-recognized mediator followed by extensive, arm's length negotiation between counsel, Plaintiff Abante Rooter and Plumbing, Inc. ("Abante") and Defendants Oh Insurance Agency ("Oh Agency") and Allstate Insurance Company ("AIC") (Oh Agency and AIC are jointly referred to herein as "Defendants" and, with Plaintiff, as "the Parties") have reached a class action settlement of this matter.[1]

The Settlement provides for the establishment of a $10,500,000 common fund to be distributed to applicable Settlement Class Members after payment of notice and administration costs, Class Counsel fees, and an incentive award to the Plaintiff.[2] Notice will be effectuated through postcards mailed directly to Settlement Class Members identified in records obtained in discovery. Class Members with known addresses will be able to receive Settlement relief without the need to submit a Claim Form, while a smaller number of Class Members for whom there is no known address may mail simple claim forms included with the postcards, or submit Claim Forms directly through the Settlement Website.

The Settlement should be preliminarily approved. In evaluating the fairness of a proposed class action settlement, the key consideration is the strength of the Plaintiff's case on the merits balanced against the amount offered in the Settlement. *See Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Although Plaintiff believes that it would ultimately prevail on the merits at trial, success is far from assured. At every turn of the litigation

---

[1] The non-opposition of Oh Agency and Allstate is limited to not objecting to certification of the Settlement Class and approval of the Settlement. Defendants do not concede or admit to any of the factual or legal assertions of the Plaintiff and, in fact, continue to vigorously dispute them.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement and Release ("Agr."), attached as <u>Exhibit 1</u>.

and in negotiations, Defendants have denied liability and vigorously defended their positions. If approved, the Settlement will bring a sure end to what would be contentious and costly litigation centered on questions of whether Oh Agency is directly liable for the allegedly unlawful calls that it placed, whether AIC is vicariously liable for those calls, and whether the dialing system used to place the calls meets the definition of an automatic telephone dialing system ("ATDS") under the Telephone Consumer Protection Act, 47 U.S.C. § 227. Notably, for Class Members whose addresses are known, Settlement Class Members will not be required to submit a claim, but will receive a pro rata share of the Settlement. The limited subset of Class Members for whom an address is not known will be afforded the opportunity to file claims.

The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiff's attorneys as Class Counsel; (4) appoint Plaintiff as representative of the Settlement Class; (5) approve the proposed notice plan, notice, and claim form; and (6) schedule the Final Approval Hearing and related dates as proposed.

## II.     NATURE OF THE CASE

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, calling a cell phone using an ATDS or an artificial or prerecorded voice. *See* 47 C.F.R. § 64.1200(a)(1)(iii). The telemarketing challenged in the case is alleged to have operated as follows:

Plaintiff alleges that AIC insurance agency Oh Agency placed telemarketing calls promoting Allstate's goods and services using a SalesDialers-brand dialing system that Plaintiff alleges meets the definition of an automatic telephone dialing system ("ATDS") under the

TCPA. Oh Agency denies that its calls were illegal or that the dialing system meets the definition of an ATDS. Plaintiff further alleged that AIC promoted and facilitated Oh Agency's robocalls. AIC denies that it is vicariously liable for those calls. Plaintiff alleges that Oh Agency placed 180,123 ATDS telemarketing calls to 53,743 unique cellular telephone numbers between April 19, 2013 and February 21, 2017.

As the Court is aware, this litigation was hard-fought, with motions to dismiss brought by Defendants on constitutional and "mootness" grounds. *Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, No. 15-9025, 2018 WL 993883, at *4 (N.D. Ill. Feb. 20, 2018). This case was not easy: AIC and Oh Agency were well-represented by skilled counsel, who used every available resource and angle to defend the case.

In addition to numerous informal discussions between counsel, the Parties participated in a grueling, all-day mediation session in Atlanta, Georgia, with Hunter R. Hughes, III, Esq., a nationally-recognized mediator and dispute resolution lecturer at the University of Virginia, on December 17, 2018. At all times, the Parties' settlement negotiations were adversarial, non-collusive, and at arm's-length. These discussions culminated in the Settlement Agreement for which Plaintiff seeks preliminary approval.

### III.    THE PROPOSED SETTLEMENT

### A.    THE SETTLEMENT CLASS

The proposed Settlement would establish a "Settlement Class" for settlement purposes only, defined as:

> All persons in the United States (i) to whom Oh Insurance Agency made a call for the purpose of encouraging the purchase of Allstate goods or services (ii) to a cellular telephone number (iii) using SalesDialers (iv) on or after April 19, 2013, up to and including February 21, 2017, limited to calls to telephone numbers on the Class List. The Class List is comprised of the users or subscribers of the 53,743 unique cell phone numbers listed therein.

(Agr. ¶ 3.1.)

## B. SETTLEMENT RELIEF

### 1. Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $10,500,000 Settlement Fund, which will be used to pay: (1) cash settlement awards to Settlement Class Members; (2) settlement administration expenses (estimated to be less than $110,000); (3) court-approved attorney's fees (for which Plaintiff's counsel anticipate seeking up to one-third of the total amount of the Settlement Fund), in addition to out of pocket expenses; and (4) a court-approved incentive award to the Class Representative, for which Plaintiff's counsel anticipate seeking up to $10,000. (Agr. ¶ 4.2.1.)

Each Settlement Class Member whose address is already known, as well as those Settlement Class Members who submit a valid claim, shall be entitled to receive an amount equal to the Settlement Class Recovery divided by the total number of violations and distributed pro rata to the Settlement Class Member. (Agr. ¶ 4.2.4.) If all of the attorneys' fees, expenses, incentive award, and notice and administration expenses are approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member payment would between $100 to $120. (Broderick Decl. ¶ 10) The Settlement provides for a potential second distribution for any funds remaining due to uncashed settlement distribution checks to those Class Members that cashed their first distribution checks, to the extent administratively feasible. (Agr. ¶ 4.2.6.)

### 2. Class Representative Incentive Award

If approved by the Court, the Plaintiff will receive an incentive award of $10,000 from the Settlement Fund. (Agr. ¶ 15.2.) This award will compensate Plaintiff for its time and effort and for the risk undertaken in prosecuting this case.

4

### 3. Attorneys' Fees and Costs

Before the hearing on final approval of the settlement, Class Counsel will apply to the Court for an award of attorneys' fees in the amount of up to one-third of the total amount of the Settlement Fund, in addition to out-of-pocket expenses. (Agr. ¶ 15.1.) As Class Counsel will address in their fee application, an award of attorneys' fees and costs will compensate Class Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action.

### 4. Remaining Funds

Any amount remaining in the Settlement Fund after paying all Approved Claims, notice and administration expenses, and any fee award and incentive award, will be distributed to a Court-approved *cy pres* recipient. (Agr. ¶ 4.2.6.) The Parties propose The Electronic Privacy Information Center ("EPIC"). (*Id.*)[3] This will only include the amount remaining from uncashed checks, to the extent further distribution to the Class is not administratively feasible. (*Id.*)

### C. NOTICE AND SETTLEMENT ADMINISTRATION

All notice and administration costs will be paid from the Settlement Fund. (Agr. ¶ 4.2.1.) The Parties took bids from four potential class administrators and have agreed upon, and propose that the Court approve, the nationally-recognized class action administration firm Kurtzman Carson Consultants LLC ("KCC") to be the Settlement Administrator and to implement the Class Notice Plan and administer the Settlement, subject to review by counsel. The Settlement

---

[3] EPIC is a non-profit in Washington, D.C. focused on consumer privacy issues that has been approved as a *cy pres* recipient in at least three TCPA class action settlements. *Heidarpour v. Central Payment Co.*, USDC, MD. Ga., 16-cv-01215 on May 4, 2017; *Charvat and Wheeler v. Plymouth Rock Energy, LLC*, et al, USDC, EDNY, 2:15-cv-04106-JMA-SIL on July 31, 2018; *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 11-02467 (D. Md. Feb. 12, 2015); and *Youngman, et al v. A&B Insurance and Financial, Inc.*, USDC, MDFL, Civil Action No. 6:16-cv-01478 (August 9, 2018).

Administrator's duties will include: (1) sending Notice to the Settlement Class pursuant to the Notice Plan; (2) responding to inquiries regarding the process from persons in the Settlement Class; (3) processing and evaluating claim forms, opt-outs and objections and (4) issuing settlement payments. (Agr. ¶ 5.1.)

The Settlement Administrator will send postcard notice via the U.S. Postal Service—substantially in the form attached as Exhibit A to the Settlement Agreement—to the names and addresses of Class Members identified through the call logs obtained in discovery (Agr. ¶ 5.4.) The Settlement Administrator will also administer a Settlement Website, through which Settlement Class Members without known addresses will be able to submit Claim Forms and all Settlement Class Member may obtain further details and information about the Settlement. (*Id.*)

## D. OPT-OUT AND OBJECTION PROCEDURES

Persons in the Settlement Class will have the opportunity to exclude themselves from the Settlement or object to its approval. (Agr. ¶¶ 11-12.3.2.) The procedures and deadlines for filing opt-out requests and objections will be conspicuously listed in the Notices and on the Settlement Website. (*See* Agr. at Ex. A and B.) The Notice informs Class Members that they will have an opportunity to appear and have their objections heard by this Court at a Final Approval Hearing. (*Id.*) The Notice also informs Settlement Class Members that they will be bound by the release contained in the Settlement Agreement unless they timely exercise their opt-out right. (*Id.*)

## E. RELEASE

The release is appropriately tailored to this case, limited to claims involving alleged violations similar to those at issue here, and the Class is limited to the subscribers or users of the 53,743 cell phone numbers on the Class List called by Oh Agency promoting AIC's goods or services. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Defendants and their predecessors, successors, parents,

subsidiaries, affiliates, officers, directors, partners, members, principals, employees, agents, attorneys, servants, and assigns from all claims, demands, causes of actions, suits, damages, and fees arising under the TCPA and/or any other federal or state telemarketing laws, whether in law or equity, that have been or could have been brought by a Releasing Person against Oh Agency or AIC in connection with Oh Agency making or causing to be made telemarketing calls promoting AIC goods or services to the telephone numbers on the Class List, where such call was made on or after April 19, 2013, up to and including February 21, 2017, including but not limited to claims of any type or nature alleging that AIC is vicariously liable for said Oh Agency calls. (Agr. ¶¶ 2.29, 2.30.)

## IV.    ARGUMENT

## A.    THE SETTLEMENT APPROVAL PROCESS

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980) (noting that "[i]n the class action context in particular there is an overriding public interest in favor of settlement") (citations, quotations, and internal marks omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 11:41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here – individual litigation – would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class

Members to receive relief in a prompt and efficient manner.

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Newberg § 11.41; *Am. Int'l Grp., Inc. v. ACE INA Holdings*, Nos. 07-2898, 09-2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation and internal citation omitted).

Approval of a class action settlement is a two-step process. *Armstrong*, 816 F.2d at 314. At the preliminary approval stage, the question for this Court is whether the settlement falls within a range of possible approval and therefore warrants dissemination of notice apprising class members of the proposed settlement. *Id.* Specifically, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties'' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the Court preliminarily approves the class action settlement, it then proceeds to the second step in the review process – the fairness hearing. *Id.*; *Manual for Complex Litig.* § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. Fed. R. Civ. P. 23 provides that, where a

proposed settlement would bind class members, a court may only approve it after a hearing and upon a finding that it is fair, reasonable, and adequate, after considering the following factors:

    (A)   the class representatives and class counsel have adequately represented the class;

    (B)   the proposal was negotiated at arm's length;

    (C)   the relief provided for the class is adequate, taking into account:

        (i)   the costs, risks, and delay of trial and appeal;

        (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)   any agreement required to be identified under Rule 23(e)(3); and

    (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in this Circuit have also considered: (1) the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the presence of collusion in reaching a settlement; and (4) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc.*, 463 F.3d at 653; *see also Armstrong*, 616 F.2d at 314; *Isby*, 75 F.3d at 1199.

As set forth herein, the Settlement warrants preliminary approval so that persons in the Class can be notified and provided an opportunity to voice approval or opposition.

**B.**    **THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

    **1.**    **The Proposed Settlement Provides Substantial Relief to the Settlement Class Particularly in Light of the Uncertainty of Prevailing on the Merits**

        **a.**    **Benefits to the Class**

Whether the relief provided for the class is adequate is a relevant factor in determining whether to approve a proposed settlement. Fed. R. Civ. P. 23(e)(2)(C). *Synfuel Techs., Inc.*, 463

F.3d at 653. Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to Plaintiff." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

The Settlement Agreement requires Defendants to pay $10,500,000 into a fund out of which Settlement Class Members will receive a cash payment. (Agr. ¶ 2.1.) Although the precise amount of each Settlement Class Member's award cannot be determined until all claims have been submitted, Plaintiff estimates that the average payment will be between $100 to $120. (Broderick Decl. ¶ 10.) Without the settlement, the Class ran the very real risk of recovering nothing, and even in the event of judgment, recovery against Defendants was far from certain. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315.

Here, the Settlement treats Class Members equitably relative to each other, *see* Fed. R. Civ. P. 23(e)(2)(D); each Class Member has the equal opportunity for a share of the Settlement Relief. (Agr. ¶ 4.2.4.) The Parties agree to resolve this matter for a Settlement Fund of $10.5 million, or $195 for each of the 53,743 Class Member not counting cost, fees, and any incentive award. This compares exceedingly well with other TCPA class action settlements that courts have approved. *See, e.g., Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-1290, 2013 WL 444619, at *7 (S.D. Cal. Feb. 5, 2013) (approximately $3 per class member); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($4.41 per class member); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781,787 (N.D. Ill. 2015) ($4.31

per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($1.20 per class member).

Because the relief provided for the Class in the Parties' proposed Settlement is fair, reasonable, and adequate, this factor supports preliminary approval.

### b. The Costs, Risks, and Delay Resulting from Continued Litigation Support Preliminary Approval.

The costs, risks, and delay of trial and appeal are also relevant factors as to the approval of a proposed settlement. Fed. R. Civ. P. 23(e)(2)(C)(i).

Plaintiff continues to believe that its claims against Defendants have merit, and that it could make a compelling case if its claims were tried. Nevertheless, Plaintiff's claims would face a number of difficult challenges if the litigation were to continue. Apart from the numerous affirmative defenses asserted in their Answers, Defendants consistently argued that the dialing system used did not qualify as an ATDS, particularly since the decision of the United States Court of Appeals for the District of Columbia in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. Mar. 16, 2018), which overturned a 2015 declaratory ruling from the FCC on the definition of an automatic telephone dialing system under the TCPA. In addition, AIC strongly contested that it could be held vicariously liable for the acts of Oh Agency.

Further, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights .... Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see*

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Indeed, the Agreement was achieved despite significant risk of no recovery for class members. During the life of this case, there was a Supreme Court case that, if resolved in the favor of the Defendant, could have eliminated or diminished TCPA class actions all together. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). And in the aftermath of *ACA Int'l*, courts have continued to issue at times disparate rulings in relation to the TCPA litigation, raising further insecurity for the class' ultimate ability to obtain relief on a nationwide, class basis. The risk of continued litigation thus supports preliminary approval of the proposed Settlement.

Litigation here would also be lengthy and expensive if this action were to proceed. Although the Parties have engaged in significant discovery, extensive motion work, including finishing the briefing of motions for summary judgment and class certification, remain. Expert discovery would also need to be completed. Realistically, it could be more than a year before the case would proceed to trial, and the appeals process may further delay any judgment in favor of Class Members. The Settlement, instead, avoids these risks and provides immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). As such, the costs, risks, and delay inherent in continued litigation support preliminary approval of the Parties' proposed Settlement.

### 2. The Settlement Resulted from Extensive, Arm's-Length Negotiations with Experienced Counsel, and Is Not the Result of Collusion.

That a proposed settlement was negotiated at arm's length is a relevant factor in

considering whether to approve it. Fed. R. Civ. P. 23(e)(2)(B). The requirement that a settlement be fair is designed to prevent collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. Newberg, *supra*, § 11:42; *see also Am. Int'l Grp.*, 2012 WL 651727, at *10.

Here, the proposed settlement was negotiated after an all-day mediation session, and was only effectuated after significant back-and-forth between the Parties. Plaintiff's counsel are particularly experienced in the litigation of nationwide class action cases, particularly under the TCPA, as are Defendants' counsel. (*See* Broderick Decl. ¶¶ 12-18, Ex. 2; Burke Decl. ¶¶ 3-11 (Ex. 3); McCue Decl. 6-12 (Ex. 4). In negotiating this Settlement, Plaintiff's Counsel had the benefit of years of experience with class actions in general and a familiarity with the facts of this case in particular. *Id*. The fact that Plaintiff achieved an excellent result for the Settlement Class despite facing significant procedural and substantive hurdles raised by skilled defense counsel is a testament to the non-collusive nature of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(A) (providing that whether "class counsel have adequately represented the class" is a relevant factor to consider in relation to approval of a proposed settlement).

### 3. The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval

The Parties have engaged in substantial, substantive discovery, permitting a thorough analysis of the factual and legal issues involved in this matter. (Broderick Decl. ¶¶ 5-7.) Settlement negotiations have been prolonged and hard-fought. Before the mediation with Hunter Hughes, Esq., the Parties provided extensive written analyses of the factual and legal issues involved with the case. (Broderick Decl. ¶ 7.) Counsel's thorough legal and factual analyses—

13

including based on substantial discovery and the use of a consulting experts—informed the Settlement. (Broderick Decl. ¶ ¶ 6-7).

## C.  PLAINTIFF'S REQUESTED FEES ARE REASONABLE

The terms of any proposed award of attorney's fees, including timing of payment, is also a relevant factor to consider in weighing a proposed class settlement. Fed. R. Civ. P. 23(e)(2)(C)(iii).  Plaintiff's Counsel seek an award not to exceed one-third of the total settlement fund to compensate counsel for reasonable fees associated with this action (Agr. ¶ 8.1.) Additionally, counsel for the Plaintiff will be applying for reimbursement of the actual costs expended in litigating this matter. (*Id.*) The requested fee is reasonable under the circumstances of this case. In the Seventh Circuit, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001).

Plaintiff's Counsel have achieved an excellent result for the Settlement Class. The Settlement creates a non-reversionary Settlement Fund of $10,500,000, affording Settlement Class Members direct monetary relief. Although Plaintiff's Counsel were confident in the ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering Defendants' substantial opposition and the complexity of the issues involved. Because putative Class Counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, counsel faced substantial risk. Finally, the fee is in line with those deemed reasonable in the Seventh Circuit. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) ("[A]ttorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.").

Prior to final approval, Plaintiff's counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request, and

14

the anticipated fee request will likewise be clearly stated in the Class Notice. (Agr. at Exs. A and B.) Further, not only is this an entirely non-reversionary settlement—meaning that no money is going back to Defendants, period—but the Settlement ensures that most Class Members won't even need to submit claims at all, and that those who do (i.e., those for whom no address can be found) will submit their claims well in advance of the Court's fee determination.[4] Thus, because attorneys' fees will only be paid after the Court is fully advised of the amount of benefits distributable to Class Members, the timing concerns raised in the Federal Rules' Committee Notes are not applicable here. *See* Fed. R. Civ. P. 23 Notes ("Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members…. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").

## D.     THE REQUESTED INCENTIVE AWARD IS REASONABLE.

Incentive awards for class representatives like the one requested here are appropriate. Such awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive award of $25,000); *see also* Manual for Complex Litig. § 21.62, n. 971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). Such awards are generally proportional to the representative's losses or claims, and can range from several hundred dollars to many thousands of dollars.

Here, Plaintiff's requested incentive award of not more than $10,000 is appropriate.

---

[4] The Claim Deadline contemplated under the Settlement is 90 days from the initial Notice Deadline, a full month before the earliest proposed Final Approval Hearing date. (Agr. ¶¶ 2.14.5, 2.19, Ex. D. p. 11.) The Settlement contemplates payment of attorneys' fees and costs within 60 days after judgment is entered and final, including any appeal. Agr. ¶ 15.1.1.

Unlike unnamed persons in the Settlement Class, who will enjoy the benefits of the Class Representative's efforts without taking any personal action, Plaintiff exposed itself to investigation, committed itself to all the rigors of litigation in the event the case did not settle, and subjected itself to all the obligations of a named party. Abante Rooter had to respond to discovery, provide documents, and consider and ultimately approve the Settlement.

**E.    THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* Manual for Complex Litig., *supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

16

The proposed Notice, attached as Exhibits A-B to the Settlement Agreement, satisfies all of the above criteria. The Notice is clear, straightforward, and provides persons in the Settlement Class with enough information to evaluate whether to participate in the Settlement. The Notice therefore satisfies the requirements of Rule 23. *See F.C.V., Inc. v. Sterling Nat'l Bank*, 652 F. Supp. 2d 928, 944 (N.D. Ill. 2009) (Rule 23(b)(3) class) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)) (explaining that a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

When considering a proposed settlement, courts also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Settlement Agreement provides for direct notice via U.S. Mail to all addresses for all class members contained in call logs produced in discovery. To supplement this postcard notice, the Settlement Agreement provides for the creation of a Settlement Website where Settlement Class Members may obtain additional relevant information about the Settlement and submit Claim Forms.[5]

This Settlement itself proposes the gold-standard in class member relief: cash payments. The Parties propose having the Settlement Administrator run reverse-lookups on the phone numbers called to identify corresponding names and addresses at which to direct the Class Notice, supplemented with the extensive class contact records produced in discovery. (Agr. ¶ 6.1.) The Settlement Administrator will then run further reverse-lookups to obtain additional addresses in the event of a Mail Notice being returned as undeliverable. (Agr. ¶ 6.1.3.) Class Members with known addresses do not need to submit a Claim in order to receive a share of the

---

[5] As attested to in the Broderick Decl. initial estimates from KCC are that mailed notice can be sent to over 90% of class members. This plan far exceeds the benchmark of 70% notice reach endorsed by the Federal Judicial Center. *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

Settlement Relief, and those for whom no address is located need only submit a simple, 1-page Claim Form identifying their contact information, the phone number called, and certifying with a signature that they received a call from Oh Agency between April 19, 2013 and February 21, 2017, and was the subscriber or user of the identified cell phone number. (Agr. ¶ 4.2.4, Ex. C.) Claimants do not need to attach any documentary evidence for claims to be approved. The Settlement Administrator will review each Claim Form to confirm that it was timely and that the claimant is a Settlement Class Member, after which the Parties will work cooperatively to resolve any dispute about the status of such claims. (Agr. ¶¶ 7.3-7.4.) Class Members who are entitled to Settlement Relief will be issued checks within 60 days of the Final Settlement Date after the judgment and any appeals are final. (Agr. ¶ 7.5.) The claims and payment process was thus designed to be accessible and straightforward, but at the same time deter unjustified claims without placing undue burdens on Class Members. The effectiveness of the Parties' proposed method of distributing relief to the Class thus supports preliminary approval.

Moreover, the Class Notice plan satisfies due process, especially because Rule 23 does not require that each potential class member receive actual notice of the class action. A court must simply make certain that class members receive "the best practicable notice that is: 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *F.C.V., Inc.*, 652 F. Supp. 2d at 944 (Rule 23(b)(3) class) (quoting *Shutts*, 472 U.S. at 808).

The proposed Class Notice constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23. This factor thus further supports preliminary approval.

**F.     THE COURT SHOULD GRANT CLASS CERTIFICATION FOR SETTLEMENT PURPOSES**

Class certification is proper if Plaintiff satisfies the requirements of Rule 23(a) and one of the prongs of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires Plaintiff to establish "'numerosity, commonality, typicality, and adequacy of representation.'" *Kleen Products LLC v. Int'l Paper*, 306 F.R.D. 585, 589 (N.D. Ill. 2015) (quoting *Messner*, 669 F.3d at 811). In this case, Plaintiff seeks certification under Rule 23(b)(3), which "requires the court to find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting the Rule) (internal quotation marks omitted).

The purpose of Rule 23 is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there would be none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010). In class actions such as this one, the alternative to certification is reaping the benefits of illegal calls with impunity. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015).

**1.     The Rule 23(a) Factors Are Met**

**a.     The Class Is Sufficiently Numerous and Joinder Is Impracticable.**

A plaintiff does not need to "specify the exact number of persons in the class, … but cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th

Cir. 1989) (internal citations omitted). The Seventh Circuit has implied that even a class of forty may be sufficient to warrant class certification. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006) (noting that "[s]ometimes 'even' 40 Plaintiff would be unmanageable"). Numerosity is determined prior to any consideration of whether a particular class member has a valid claim. *See Parko v. Shell Oil Co.,* 739 F.3d 1083, 1084 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.") (emphasis in original).

In this case, there are 53,743 Settlement Class Members. This more than establishes that "joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied.

### b. The Settlement Class Shares Many Common Issues of Law and Fact.

"One of the requirements for a class action in federal court is the existence of 'questions of law or fact common to the class.'" *Suchanek*, 764 F.3d at 755 (quoting Fed. R. Civ. P. 23(a)(2)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.* at 756 (citing *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010)). "The Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'" *Id.* at 755 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Here, every Class Member's claims arise from the same common nucleus of operative facts: Oh Agency called them to market products or services of AIC, using its SalesDialers dialing platform. Similarly, every Class Member has an interest in the same overarching questions of law, *i.e.*, whether Oh Agency violated the TCPA by making these calls, and whether AIC is vicariously liable for those calls. On these issues alone, a class is appropriate. Additional common questions include:

- Does Oh Agency's dialing system qualify as an ATDS under the TCPA?
- Did Oh Agency have consent of call recipients to make the calls challenged in this case?

▪ If there were violations of the TCPA, were those violations knowing or willful, such that treble damages are appropriate under 47 U.S.C. § 227(b)(3)?

These questions are dispositive, apply equally to all Class Members and, importantly, can be *answered* using common proof and uniform legal analysis. Further, the uniformity of the applicable law — the federal TCPA — distinguishes this case from putative nationwide class actions requiring application of multiple states' laws. The commonality requirement is therefore met. As the Seventh Circuit recently stated, "[c]lass certification is normal in litigation under § 227, because the main questions … are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

### c.  Plaintiff's Claims Are Typical of the Settlement Class.

As with commonality, the threshold requirement for typicality is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009). Typicality means that the plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of the other class members and ... [the] claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). This component is usually satisfied where "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). However, typicality does not require that the representative's claims be identical to every other class member. *See Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006) ( "factual variations may not defeat typicality").

Here, Plaintiff satisfies the typicality requirement because its interests are sufficiently aligned with those of the Class. Like all Class Members, Plaintiff received Oh Agency's SalesDialers-made telemarketing calls on its cell phone. Plaintiff is on the Class List. It seeks the same relief as the Class, and is not subject to unique defenses. Consequently, typicality is met.

### d. Plaintiff and its Counsel Are Adequate Representatives.

"Rule 23(a)(4) requires that the named Plaintiff and class counsel 'will fairly and adequately protect the interests of the class.'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014), petition denied by *In re Caribbean Cruise Line, Inc.*, 2014 U.S. App. LEXIS 25084 (7th Cir. 2014) (quoting the Rule); see also Fed. R. Civ. P. 23(e)(2)(A) (providing that whether "the class representatives and class counsel have adequately represented the class" is a relevant factor in determining whether to approve a proposed settlement). In the adequacy analysis, the Court considers "the adequacy of the named Plaintiff as representatives of the proposed class's myriad members, with their differing and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). While the Supreme Court has noted that adequacy and typicality analysis "tend [ ] to merge," *Windsor*, 521 U.S. at 626 n. 20, courts have rejected proposed class representatives due to "conflicts of interest" or "serious credibility problems," *Birchmeier*, 302 F.R.D. at 252 (internal quotation marks and citations omitted).

Here, the Plaintiff has no conflicting interests with Class Members. In fact, by investigating, documenting, filing, and prosecuting this action by providing discovery responses documents and a full-day deposition, Plaintiff has demonstrated a desire and ability to protect Class Members' interests. There is nothing to suggest that Plaintiff has any interest antagonistic to the vigorous pursuit of the class claims against Defendants. Rather, Plaintiff's interests are perfectly aligned with those of the Class. In addition, putative Class Counsel are practitioners with substantial experience in consumer and class action litigation, including cases under the TCPA similar to this one. The requirements of Rule 23(a), therefore, are satisfied.

### 2. The Rule 23(b)(3) Factors Are Satisfied.

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck &*

*Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Predominance is satisfied so long as individual issues do not "overwhelm" common issues. *Id.* (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)). Common issues predominate here because the central liability question— *i.e.*, whether the calls were made in violation of the TCPA—can be established through generalized evidence. Predominance is "readily met" in certain consumer cases. *Windsor*, 521 U.S. at 625. The touchstone for predominance analysis in the Seventh Circuit is efficiency. *Butler v. Sears, Roebuck & Co.,* 702 F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *vac'd on other grounds* 133 S. Ct. 2768 (2013), *judgment reinstated*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"), *cert. denied* 134 S. Ct. 1277 (2014). "[T]he requirement of predominance is not satisfied if 'individual questions ... overwhelm questions common to the class.'" *Butler II,* 727 F.3d at 801 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013)).

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Windsor*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Additionally, resolution of tens of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Butler*, 727 F.3d at 801 (noting that "the more claimants there are, the more likely a class action is to yield substantial economies in litigation") (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)). Thus, certification for purposes of settlement is appropriate.

## G.  SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE.

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation.

Proponents of the Settlement may explain the terms and conditions of the Settlement Agreement and offer argument in support of final approval. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than 100 days after the Preliminary Approval Order is entered, and schedule further proceedings pursuant to the proposed Preliminary Approval Order attached as Exhibit D to the Settlement Agreement and Exhibit 2 hereto.

## V. CONCLUSION

The proposed class action Settlement is fair, reasonable, adequate, and well within the permissible range of possible judicial approval. It should, therefore, be approved in all respects, and Plaintiff respectfully asks that the Court enter a Preliminary Approval Order in the form attached hereto as Exhibit 5.

Respectfully submitted,

ABANTE ROOTER AND PLUMBING, INC.,
individually and on behalf of a class of all persons and
entities similarly situated

Dated: April 12, 2019

By: _/s/ Alexander H. Burke_
  Alexander H. Burke
  Email: aburke@burkelawllc.com
  Daniel J. Marovitch
  Email: dmarovitch@burkelawllc.com
  BURKE LAW OFFICES, LLC
  155 North Michigan Avenue, Suite 9020
  Chicago, Illinois 60601
  Telephone: (312) 729-5288

  Edward A. Broderick
  Email: ted@broderick-law.com
  BRODERICK & PARONICH, P.C.
  99 High Street, Suite 304
  Boston, Massachusetts 02110
  Telephone: (617) 738-7080

Matthew P. McCue (appearance forthcoming)
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Alexander H. Burke*
Alexander H. Burke