IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> OH INSURANCE AGENCY and ALLSTATE INSURANCE COMPANY, <br><br> Defendants. | Case No. 1:15-cv-09025 <br><br><br><br><br><br><br><br> Hon. Judge Jorge L. Alonso <br> Hon. Mag. Judge Young B. Kim |

**DECLARATION OF CARLA A. PEAK IN SUPPORT OF NOTICE PLAN**

I, Carla A. Peak, declare as follows:

1. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct. I am the Vice President of Legal Notification Services at KCC Class Action Services ("KCC").

2. I am over the age of 21. The matters described in this Declaration are based upon my own personal knowledge, as well as information received from the parties. The opinions and recommendations made herein are based on my training and experience.

3. This Declaration describes my experience, as well as KCC's experience. It also describes the proposed notice plan (the "Notice Plan") designed for this class action Settlement, including why I believe it will be effective and will constitute the best notice practicable under the circumstances of this Settlement, pursuant to Fed. R. Civ. P. 23(c)(2)(B) ("Rule 23").

**EXPERIENCE**

4. KCC is a leading class action administration firm that provides comprehensive class action services, including legal notification, email and postal mailing campaign implementation,

website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, as well as other related services critical to the effective administration of class action settlements. With more than thirty years of industry experience,[1] KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest. Since 1984, KCC has been retained to administer more than 6,000 class actions and distributed settlement payments totaling well over $20 billion in assets.

5.  Further, KCC has been retained as the administrator in a variety of telephone consumer protection act (TCPA) matters. Some TCPA case examples which KCC has been involved with include: *Abante Rooter and Plumbing v. Alarm.com, Inc*., No. 15-cv-06314 (N.D. Cal.); *Abdeljalil v. GE Capital Retail Bank*, No. 12-cv-02078 (S.D. Cal.); *Adams v. AllianceOne Receivables Management, Inc*., No. 08-cv-00248 (S.D. Cal.); *Allard v. SCI Direct, Inc. d/b/a Neptune Society*, No. 17-cv-04692 (N.D. Ill.); *Allen v. JPMorgan Chase Bank*, No. 13-cv-08285 (N.D. Ill.); *Bayat v. Bank of the West*, No. 13-cv-2376 (N.D. Cal.); *Birchmeier v. Caribbean Cruise Line, Inc*., No. 12-cv-04069 (N.D. Ill.); *Biringer v. First Family Insurance, Inc*., No. 14-cv-566 (N.D. Fla.); *Boise v. ACE American Insurance Company*, No. 15-cv-21264, (S.D. Fla.); *Charvat v. AEP Energy*, No. 14-cv-3121 (N.D. Ill.); *Charvat v. Travel Services*, No. 12-cv-05746 (N.D. Ill.); *Coffman v. Glide Talk, Ltd*., No. 13-cv-05190 (N.D. Ill.); *Connor v. JPMorgan*, No. 10-cv-01284 (S.D. Cal.); *Couser v. Comenity Bank*, No. 12-cv-02484 (N.D. Cal.); *Couser v. Dish One Satellite, LLC*, No. 15-cv-02218 (C.D. Cal.); *Craftwood Lumber Co. v. Interline Brands, Inc*., No.

---

[1] KCC acquired Gilardi & Co. LLC in 2015. This declaration combines the class action notice and administration experience of both firms.

11-cv-4462 (N.D. Ill.); *Crossley v. Joya Communications, Inc.*, No. 16 CH 14771, (Circuit Court of Cook County, Ill.); *Cummings v. Sallie Mae, Inc.*, No. 12-cv-9984 (N.D. Ill.); *Davenport v. Discover*, No. 15-cv-06052 (N.D. Ill.); *Etzkorn v. 3 Day Blinds*, No. 17-cv-02836 (E.D. Mo.); *Griffith v. ContextMedia, Inc.*, No. 16-cv-02900 (N.D. Ill.); *Grannan v. Alliant Law Group, P.C.*, No. 10-cv-02803 (N.D. Cal.); *Guarisma v. Blue Cross Blue Shield of Florida*, No. 13-cv-21016 (S.D. Fla.); *Hageman v. AT&T Mobility LLC*, No. 13-cv-50 (D. Mont.); *Hetherington v. Omaha Steaks*, No. 13-cv-2152 (D. Ore.); *Hibler v. Santander Consumer USA*, No.13-cv-01354 (C.D. Cal.); *Horn v. iCan Benefit Group LLC*, No. 17-cv-81027 (S.D. Fla.); *In re Life Time Fitness*, MDL No. 2564 (D. Minn.); *In Re Midland Credit Management, Inc. TCPA Litigation*, No. 11-md-2286 (S.D. Cal.); *In Re: Monitronics International, Inc. TCPA Litigation*, No. 13-md-2493 (N.D. W.Va.); *In re: Portfolio Recovery Associates, LLC TCPA Litigation*, No. 11-md-02295 (S.D. Cal.); *Jonsson v. USCB, Inc.*, No. 13-cv-8166 (C.D. Cal.); *James v. JPMorgan Chase Bank NA*, No. 15-cv-2424 (M.D. Fla.); *Jonsson v. USCB, Inc.*, No. 13-cv-8166 (C.D. Cal.); *Kolinek v. Walgreen Co.*, No. 13-cv-04806 (N.D. Ill.); *Lee v. Global Tel Link Corporation*, No. 15-cv-02495 (C.D. Cal.); *Lees v. Anthem Ins. Cos., Inc.*, No. 13-cv-01411 (E.D. Mo.); *Leung v. XPO Settlement*, No. 15-cv-03877 (N.D. Ill.); *Luster v. Duncan Solutions*, No. 14-cv-00112 (N.D. Ga.); *Luster v. Wells Fargo*, No. 15-cv-01058 (N.D. Ga.); *Martin v. Global Marketing Research Services, Inc.*, No. 14-cv-1290 (M.D. Fla.); *Martinez v. Medicredit, Inc.*, No. 17-cv-02809 (E.D. Mo.); *Medina v. Enhanced Recovery Company LLC d/b/a ERC*, No. 15-cv-14342 (S.D. Fla.); *Melito v. American Eagle Outfitters*, No. 14-cv-02440 (S.D.N.Y.); *Mey v. Got Warranty, Inc.*, No. 15-cv-00101 (N.D. W.Va.); *Mey v. Patriot Payment Group*, No. 15-cv-00027 (N.D. W.Va.); *Newman v. AmeriCredit*, No. 11-cv-3041 (S.D. Cal.); *Ossola v. American Express Co.*, No. 13-cv-04836 (N.D. Ill.); *Prater v. Medicredit, Inc.*, No. 14-cv-00159 (E.D. Mo.); *Prather v. Wells Fargo*, No. 15-cv-04231 (M.D.

3

Ga.); *R. Fellen, Inc. v. Rehabcare Group, Inc.*, No. 14-cv-0208 (E.D. Cal.); *Reginald Moore v. Family Dollar Stores, Inc.*, No. 14- cv-01542 (E.D. Mo.); *Rinky Dink Inc. v. World Business Lenders LLC*, No. 14-cv-00268 (W.D. Wash.); *Sanders v. RBS Citizens*, No. 13-cv-3136 (S.D. Cal.); *Schwyhart v. AmSher Collection Services*, No. 15-cv-01175 (N.D. Ala.); *Sherman v. Kaiser Foundation Health Plan, Inc.*, No. 13-cv-00981 (S.D. Cal.); *Shestopal v. Follett Higher Education Group Inc.*, No. 15-cv-8980 (N.D. Ill.); *Steinfeld v. Discover Financial Services*, No. 12-cv-01118 (N.D. Cal.); *Thomas v. Dun & Bradstreet Credibility Corp.*, 15-cv-03194 (C.D. Cal.); *Wannemacher v. Carrington Mortgage Servs.*, No. 12-cv-02016 (C.D. Cal.); *West v. California Service Bureau, Inc.*, No. 16-cv-03124 (N.D. Cal.); and *Willis v. iHeartMedia, Inc.*, No. 2016 CH 02455 (Cook County Circuit Court, Ill.).

6. In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for over 15 years. During that time, I have been involved in all aspects of the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth* and by the Federal Judicial Center ("FJC").

## NOTICE PLAN OVERVIEW

7. The proposed Notice Plan utilizes individual and digital notice to effectively reach the Settlement Class. The Notice Plan is expected to reach approximately 90% or more of likely Settlement Class Members via the individual notice effort alone.[2] Reach will be further enhanced by the digital notices.

8. The expected reach of the Notice Plan is consistent with other effective court-

---

[2] The reach or net reach of a notice program is defined as the percentage of a class that was exposed to a notice net of any duplication among people who may have been exposed more than once.

4

approved settlement notice programs and is designed to meet due process requirements. The FJC's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (the "FJC Checklist") considers 70-95% reach among class members to be a "high percentage" and reasonable.

## NOTICE PLAN DETAILS

### *Class Definition*

9.  The Settlement Class is defined as: all persons in the United States (i) to whom Oh Insurance Agency made a call for the purpose of encouraging the purchase of Allstate goods or services (ii) to a cellular telephone number (iii) using SalesDialers (iv) on or after April 19, 2013, up to and including February 21, 2017, limited to calls to telephone numbers on the Class List.

10. The Class List is comprised of the users or subscribers of the 53,743 unique cell phone numbers listed therein.

### *Data Preparation*

11. The parties provided KCC with the Class List, after which KCC performed a reverse directory search on all of the unique cell phone numbers provided. KCC routinely performs reverse directory searches and lookups. This process has been used in more than a dozen KCC administrations of TCPA matters, and has been relied upon by KCC for a number of administrations in past years for the purpose of notice. KCC will facilitate multiple vendor reverse look-ups to identify names and addresses associated with telephone numbers.

12. After KCC completed the above-referenced address searches, it supplemented these results with additional name and address data the parties received through discovery, for those phone numbers for which no name and address had been located through reverse-lookup. KCC reviewed this entire "Notice List" to ensure that a Single-Postcard Summary Notice is mailed to

each Settlement Class Member with a postal address. It is my understanding that 53,032 postal addresses were located (including duplicate addresses for certain numbers), and that, in total, the overall data set leaves just 711 of the 53,743 unique phone numbers on the Class List without name and address information.

13. I am also informed that Plaintiff's counsel have issued subpoenas to the four largest cellular carriers in the United States (AT&T, Verizon Wireless, Sprint, and T-Mobile) to attempt to locate address information for the 711 "unknown" Class Members. To the extent additional addresses are found, mail notice will be sent to those Class Members, as well.

*Individual Notice*

14. KCC will send a Single-Postcard Summary Notice via United States Postal Service (USPS) to all Settlement Class Members for which a postal address was obtained.

15. Prior to mailing, the postal addresses will be checked against the National Change of Address (NCOA)[3] database maintained by USPS; certified via the Coding Accuracy Support System (CASS);[4] and verified through Delivery Point Validation (DPV).[5]

16. Postcard Notices returned as undeliverable will be re-mailed to any new address available through postal service information, for example, to the address provided by the postal service on returned pieces for which the automatic forwarding order has expired, or to better addresses that may be found using a third-party lookup service or "skip-tracing." Upon

---

[3] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[4] Coding Accurate Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[5] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

successfully locating better addresses, Postcard Notices will be promptly re-mailed.

*Supplemental Digital Notices*

17. In addition to the individual notice efforts described above, KCC will implement a digital notice campaign. The digital notice campaign will consist of digital advertisements on the Google Display Network, and the social media sites Facebook and Instagram. The digital advertisements will be targeted to reach likely Settlement Class Members, including those for whom no address could be found, and will include an embedded link to the case website, which, when clicked on will take the user to the settlement website.

*Settlement Website*

18. KCC will establish and maintain a case-specific website that will allow Settlement Class Members to obtain additional information and documents about the Settlement. The Settlement Website will allow users to read, download, and print the Settlement Agreement, Preliminary Approval Order, Long Form Notice and Claim Form. Settlement Class Members will also be able to review a list of Frequently Asked Questions and Answers and file a claim online.

19. While search optimization is not uniform across different search engines, and that the exact strategy to maximize it is a carefully-guarded secret within those businesses, KCC will implement search engine optimization ("SEO") to include: (1) inserting on the website language specific to the Settlement (keyword optimization) multiple times throughout the site (the goal being to use language a potential Class Member would use that could lead them to come upon the website); (2) making the website crawl accessible / indexable; (3) using words related to the lawsuit in the URL; and (4) using meta tags and titles to increase readability.

*Toll-Free Telephone Number*

20. KCC will establish and host a case-specific toll-free number allowing Settlement

Class Members to learn more about the Settlement in the form of answers to frequently-asked questions. It will also allow Settlement Class Members to request to have a Long Form Notice and Claim Form mailed directly to them or speak directly to a live operator.

### *Settlement P.O. Box*

21. KCC will establish and monitor a Settlement mailbox where Settlement Class Members may submit hard copy Claim Forms, exclusion requests, and other case correspondence.

### CONCLUSION

22. The Notice Plan is expected to effectively reach approximately 90% or more of Settlement Class Members by way of the individual notice effort alone. The reach of the Notice Plan will be further enhanced by the supplemental digital notice campaign. The Notice Plan is consistent with other effective settlement notice programs. It is the best notice practicable and meets the "desire to actually inform" due process communications standard of *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). It provides the same reach and frequency evidence that Courts have approved and has withstood appellate scrutiny, other expert critiques, as well as collateral review.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 10, 2019.

*Carla Peak*

Carla A. Peak