**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) ) | Case No. 1:15-cv-09025 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| OH INSURANCE AGENCY and ALLSTATE INSURANCE COMPANY, | ) ) ) | Hon. Judge Jorge L. Alonso Hon. Mag. Judge Young B. Kim |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR**
**ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................2

III.  THE SETTLEMENT ............................................................................................5

IV.  LEGAL STANDARD FOR ATTORNEY'S FEE DECISIONS.........................6

V.  ARGUMENT .........................................................................................................8

    A.  Class Counsel's Requested Fee Award Is Reasonable. ...........................8

        1.  Seventh Circuit Attorney Fee Analysis......................................9

        2.  The risk associated with this litigation justifies the requested fee award of one-third of the common fund. ................................10

        3.  The requested fee comports with the contract between Plaintiff and Class Counsel, and typical contingency fee agreements in this Circuit. .............14

        4.  The requested fee reflects the fees awarded in other settlements. ............15

        5.  The quality of performance and work invested support the fee request....18

        6.  The stakes of the case further support the fee request. ..............................18

    B.  The Court Should Also Award Reasonable Reimbursement for Expenses...........19

    C.  The Incentive Award to the Class Representative Should Be Approved. .............20

VI.  CONCLUSION....................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*,
  No. 15-9025, 2018 WL 993883 (N.D. Ill. Feb. 20, 2018) ....................................................... 5

*Abbott v. Lockheed Martin Corp.*,
  No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) ...................................................... 17

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018) ................................................................................................ 13

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*,
  No. 09-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ....................................................... 13

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12-4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017) .................................................... 12

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
  480 F. Supp. 1195 (S.D.N.Y. 1979) ....................................................................................... 16

*Beesley v. Int'l Paper Co.*,
  No. 06-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ........................................................ 19

*Benzion v. Vivint, Inc.*,
  No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. No. 201) ........................................................ 21

*Bickel v. Sheriff of Whitley Cnty*,
  No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) ................................................... 17

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014) ............................................................................................... 3

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792 (7th Cir. 2018) .................................................................................................. 17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ....................................................................................................... 7, 9, 19

*CE Design Ltd. v. CV's Crab House North, Inc.*,
  No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) ........................................................... 16

*CE Design, Ltd. v. Exterior Sys., Inc.*,
  No. 07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. No. 39) .................................................................. 16

*Charvat v. AEP Energy, Inc.*,
   No. 13-662 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 44) ................................................ 10

*City of Greenville v. Syngenta Corp Prot., Inc.*,
   904 F. Supp. 2d 902 (S.D. Ill. 2012) ....................................................................... 16

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ......................................................................... 20, 21

*Cummings v. Sallie Mae*,
   No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) ...................................... 10, 16

*Desai v. ADT Sec. Servs., Inc.*,
   No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) .................................... 16, 21

*Espejo v. Santander Consumer USA, Inc.*,
   No. 11-8987, 2019 WL 2450492 (N.D. Ill. June 12, 2019) ..................................... 13

*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) ............................................................................... 7, 8

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Dkt. No. 146) .............................................. 16

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) ................................................................................. 14

*Gaskill v. Gordon*,
   942 F. Supp. 382 (N.D. Ill. 1996) ........................................................................... 8

*Golan v. Veritas Entm't, LLC*,
   No. 14- 69, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017) ...................................... 14

*Greene v. Emersons Ltd.*,
   No. 76-2178, 1987 WL 11558 (S.D.N.Y. May 20, 1987) ....................................... 16

*Heekin v. Anthem, Inc.*,
   No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ................................. 21

*Hinman v. M&M Rentals, Inc.*,
   No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Dkt. No. 225) .............................................. 16

*In re Ampicillin Antitrust Litig.*,
   526 F. Supp. 494 (D.D.C. 1981) ............................................................................ 16

*In re Bankcorp. Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ............................................................................... 16

*In re Capital One TCPA Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................ 7, 10, 17

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997) ........................................................................ 16

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) .................................................................................... 8

*In re Dairy Farmers of Am., Inc.*,
   MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015).................................. 18

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   No. 10-4038, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011)................................. 20

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................................ 16

*In re Synthroid Mkt. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ............................................................. 6, 14, 19, 20

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) ......................................................................... 8

*Jamison v. First Credit Servs.*,
   290 F.R.D. 92 (N.D. Ill. 2013)............................................................................... 12

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ................................................................................ 10

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ................................................................................ 14

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015)............................................................... 15, 17, 18

*Leyse v. Lifetime Entm't Servs.*,
   No. 13-5794, 2015 WL 5837897 (S.D.N.Y. Sept. 22, 2015), *aff'd*, 679 F. App'x 44 (2d Cir.
   2017) ...................................................................................................................... 3

*Luster v. Green Tree Servicing, LLC*,
   No. 14-1763 (N.D. Ga. Sept. 5, 2018) (Dkt. No. 153)........................................... 12

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................ 14

*Marks v. Crunch San Diego, LLC,*
  904 F.3d 1041 (9th Cir. 2018) ............................................. 13

*Martin v. Dun & Bradstreet, Inc.,*
  No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) ............................................. 10

*Martin v. Dun & Bradstreet, Inc.,*
  No. 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. 63) ............................................. 16

*Martin v. JTH Tax, Inc.,*
  No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Dkt. No. 86) ............................................. 17

*McCue v. MB Fin., Inc.,*
  No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ............................................. 17

*Mullins v. Direct Digital, LLC,*
  795 F.3d 654 (7th Cir. 2015) ............................................. 3

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.,*
  No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. No. 116) ............................................. 16

*Pearson v. NBTY, Inc.,*
  772 F.3d 778 (7th Cir. 2014) ............................................. 8, 9

*Pinkus v. Sirius XM Radio, Inc.,*
  319 F. Supp. 3d 927 (N.D. Ill. 2018) ............................................. 13

*Prena v. BMO Fin. Corp.,*
  No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ............................................. 17

*Redman v. RadioShack Corp.,*
  768 F.3d 622 (7th Cir. 2014) ............................................. 8

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP,*
  No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ............................................. 15

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.,*
  No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. No. 100) ............................................. 16

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC,*
  No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ............................................. 12

*Silverman v. Motorola Solutions, Inc.,*
  739 F.3d 956 (7th Cir. 2013) ............................................. 10

*Spano v. The Boeing Co.,*
  No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) ............................................. 17

*Spicer v. Chi. Bd. Options Exch., Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993) ...................................................... 20

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ............................................ 7, 10, 18

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ............................................... 14, 16

*Van Gemert v. Boeing Co.*,
    516 F. Supp. 412 (S.D.N.Y. 1981) ........................................ 16

*Will v. Gen. Dynamics Corp.*,
    No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) .............. 16, 21

*Zolkos v. Scriptfleet, Inc.*,
    No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ............ 17

## Statutes

15 U.S.C. § 1681n(a) ............................................................. 15

15 U.S.C. § 1692k(a) ............................................................ 15

47 U.S.C. § 227 ............................................................... 1, 2

47 U.S.C. § 227(b)(1)(A)(iii) ................................................. 2

47 U.S.C. § 227(b)(3) .................................................. 14, 15, 19

## Other Authorities

*In re Rules & Regs. Implementing the TCPA*,
    30 FCC Rcd. 7961 (2015) ................................................ 13

## Rules

Fed. R. Civ. P. 23 ............................................................ 19

Fed. R. Civ. P. 26(a)(2)(B) ................................................... 5

## Regulations

47 C.F.R. § 64.1200(a)(1)(iii) ................................................ 2

## I.    INTRODUCTION

On May 29, 2019, this Court preliminarily approved a proposed class action settlement between Plaintiff Abante Rooter and Plumbing, Inc. ("Abante") and Defendants Oh Insurance Agency ("Oh Agency") and Allstate Insurance Company ("Allstate"). Dkt. 207. The Settlement creates a $10,500,000, non-reversionary common fund for the benefit of a Settlement Class comprised of the roughly 53,743 persons and entities whose cell phone numbers Oh Agency called using its SalesDialers dialer to encourage the purchase of Allstate goods or services between April 19, 2013 and February 21, 2017—calls Plaintiff alleges violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Class Members for whom an address is known or who otherwise submit a valid claim are each expected to receive $100 or more. Class Counsel have zealously prosecuted this action for over three years, achieving the Settlement only after extensive discovery, adversarial motion practice, an all-day mediation with a third-party neutral, and weeks of subsequent negotiations finalizing the Agreement.

As compensation for the substantial benefit conferred upon the Settlement Class, Plaintiff respectfully moves the Court for an award to Class Counsel of attorneys' fees of $3,500,000, which represents one-third of the Settlement Fund. Class Counsel additionally seek reimbursement of their out-of-pocket costs of $73,420.69 incurred in prosecuting the case. This request should be approved because (1) it represents the market rate for this type of settlement, and (2) represents a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. Plaintiff also respectfully moves the Court for an award of $10,000 to Plaintiff Abante for its work on behalf of the Class. As detailed herein, Plaintiff's motion should, respectfully, be granted.

1

## II.    <u>BACKGROUND</u>

This case concerns alleged violations of the TCPA, 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any non-emergency call to a cell phone number using an automatic telephone dialing system ("autodialer" or "ATDS") or an artificial or prerecorded voice, without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). In Plaintiff Abante's case, it received multiple, automated calls to a cell phone from Oh Agency in an effort to encourage the sale of Allstate goods or services, despite Defendants' lack of consent to do so. Dkt. 86, Am. Compl. ¶¶ 16-35.

Plaintiff filed this action over three-and-a-half years ago on October 13, 2015. The case was hard-fought: Out of the gate, Allstate[1] moved to dismiss on the basis of purported lack of subject matter jurisdiction and standing, as well as to indefinitely stay the proceedings pending the Supreme Court's resolution of *Spokeo, Inc. v. Robins* and *Campbell-Ewald Co. v. Gomez*—two long-anticipated decisions addressing Article III standing in the context of a consumer protection statute and the effect of an unaccepted offer of full individual relief on a named plaintiff's class claims, respectively. Dkt. 12.

Class Counsel submitted a response brief vigorously opposing Allstate's motion to dismiss and stay, and the Court ultimately denied Allstate's motion to dismiss without prejudice, while permitting a stay pending the Supreme Court's rulings. Dkt. 22, 23. Class Counsel—recognizing that the case might be won or lost depending on their ability to obtain records reflecting the calls at issue (records likely in the possession of some then-unknown Allstate sub-vendor who could very well purge or "lose" such critical data during the interim of the stay)—thereafter aggressively pursued efforts to ensure the proper preservation and eventual production

---

[1]    At the initial stage of these proceedings, the "Allstate" entity serving as a defendant was The Allstate Corporation, which was later replaced with Allstate Insurance Company on August 15, 2016. Dkt. 86.

of class data.[2] On December 1, 2015, Plaintiff moved to commence discovery as to Oh Agency to avoid the destruction of class member materials, Dkt. 24, which the Court granted in entering a Preservation Order directing Oh Agency to preserve relevant data and ESI, and to obtain all records from its agents that may be relevant to this case. Dkt. 27.

After efforts to confirm Oh Agency's compliance with the Court's order failed to address the preservation concerns to Class Counsel's satisfaction, on January 12, 2016 and February 18, 2016, Plaintiff moved to compel Oh Agency's compliance with the Court's prior discovery order that, while ultimately denied, put Oh Agency on further notice of its expected document preservation obligations. Dkt. 28, 30, 38, 41. More importantly, this motion practice led to the Court entering its March 7, 2016 order granting Plaintiff leave to subpoena Oh Agency's dialer vendor, SalesDialers, in order to ensure preservation of its relevant data, to be produced to and secured by Oh Agency's counsel during the interim of the stay. Dkt. 42. Further, after the subpoena meet-and-confer process with SalesDialers revealed that its data did not include the bulk call detail or dialer records for the calls at issue, Class Counsel sought leave to issue a preservation subpoena to SalesDialers' telecommunications company, Flowroute, which the Court granted on April 26, 2016. Dkt. 45, 47.

With the Supreme Court having decided *Spokeo* and *Campbell-Ewald*, the Court lifted the stay on May 18, 2016, Dkt. 48, and Class Counsel were able to access the subpoena response materials of Flowroute and SalesDialers. Neither contained the comprehensive call detail records

---

[2]     *E.g., Leyse v. Lifetime Entm't Servs.*, No. 13-5794, 2015 WL 5837897, at *5 (S.D.N.Y. Sept. 22, 2015), *aff'd*, 679 F. App'x 44 (2d Cir. 2017) (denying class certification in TCPA action on ascertainability grounds given that "[t]here is no copy of the list of called numbers that the parties have been able to discover"); *but see Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015) (rejecting "enhanced ascertainability" requirement for class certification, and citing *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014), for the proposition that making a class contingent on a defendant's own recordkeeping "or declining to certify a class altogether, ... would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct").

3

critical to Plaintiff's case, but Flowroute's response permitted Class Counsel to identify yet another third party, Impiger Technologies Inc. ("Impiger"), as being associated with the calls at issue—indeed, as their investigation would show, Impiger was the back-end service provider for Oh Agency's SalesDialers dialer (a fact inexplicably withheld). Class Counsel subpoenaed Impiger and its principal, and after substantial back-and-forth over the course months—and motion practice with Defendants[3]—they were able to secure not just basic call detail records, but *the entire Oh Agency SalesDialers database* containing, inter alia, lead data, prerecorded message data, and dialer call records.[4]

The parties also engaged in extensive motion practice. On June 3, 2016, Defendants filed motions to dismiss for lack of subject matter jurisdiction and constitutional standing after the Supreme Court's decisions in *Campbell-Ewald* and *Spokeo*. Dkt. 50, 53. The parties fully briefed the motions, Dkt. 65, 69, 72, although they were ultimately deemed moot after Plaintiff amended its complaint on August 15, 2016. Dkt. 86, 106. Defendants renewed their motions to dismiss on August 29, 2016 and September 9, 2016, and the parties again briefed the issues, along with new arguments bolstered by Class Counsel's analysis of preliminary data from SalesDialers and Impiger. Dkt. 96, 102, 120, 125, 126, 130, 135, 137, 142, 143, 144, 147. Class Counsel also filed a motion for class certification on October 4, 2016, as a further stop-gap against Defendants' standing-based arguments, although the Court denied it without prejudice prior to full briefing in light of the ongoing status of the case. Dkt. 111, 124. On February 20, 2018, the Court denied Defendants' motions to dismiss, and the case was permitted to proceed. Dkt. 150; *Abante Rooter*

---

[3]  This production was made pursuant to a limited lift of a subsequent stay the Court entered pending ruling on Defendants' motions to dismiss, which the Court granted at Plaintiff's request over Defendants' objection. Dkt. 108, 117, 123.

[4]  This production was literally a "dump" of all data Impiger had for the account associated with Oh Agency; thus, while extensive, it took a substantial amount of Class Counsel's and Plaintiff's expert's time to reverse-engineer the data into a usable structure analyzed for use in the case.

*& Plumbing, Inc. v. Oh Ins. Agency*, No. 15-9025, 2018 WL 993883 (N.D. Ill. Feb. 20, 2018).

Apart from the above and other third parties Class Counsel subpoenaed in this action, the Parties engaged in extensive first-party discovery, which included exchanging multiple sets of written discovery requests and thousands of pages of responsive materials. Exhibit A, Burke Decl. ¶ 15. Class Counsel also retained and worked extensively with expert Jeffrey A. Hansen in anticipation of renewed class certification briefing, and furnished a comprehensive Fed. R. Civ. P. 26(a)(2)(B) report to defense counsel on July 18, 2018, which, inter alia, used the Structured Query Language ("SQL") database produced by Impiger to identify what would ultimately become the Settlement Class subject to the Parties' Agreement. Exhibit A, Burke Decl. ¶ 15.

With several depositions and class certification briefing on the horizon, the Parties decided to discuss the possibility of settlement. On December 17, 2018, the Parties participated in an all-day mediation with Hunter R. Hughes, III, Esq. in Atlanta, Georgia, preceded by the exchange of mediation position papers. Exhibit A, Burke Decl. ¶ 17. The Parties succeeded in achieving an agreement in principle at the mediation, and for weeks thereafter continued to negotiate and finalize the terms of the proposed Settlement. Exhibit A, Burke Decl. ¶ 17; Dkt. 189. This was followed by further modifications and efforts to address issues raised by the Court at initial presentment, before the Court ultimately preliminarily approved the Settlement on May 29, 2019. Exhibit A, Burke Decl. ¶ 17; Dkt. 200, 207.

## III.    THE SETTLEMENT

The Settlement requires Defendants to pay $10,500,000 for the benefit of a Settlement Class defined as:

> All persons in the United States (i) to whom Oh Insurance Agency made a call for the purpose of encouraging the purchase of Allstate goods or services (ii) to a cellular telephone number (iii) using SalesDialers (iv) on or after April 19, 2013, up to and including February 21, 2017, limited to calls to telephone numbers on

the Class List. The Class List is comprised of the users or subscribers of the 53,743 unique cell phone numbers listed therein.

Dkt. 200-1, Agr. ¶¶ 2.40, 3.1; Dkt. 207, Order ¶ 4. Each Class Member with a known address[5] or who otherwise submits an approved claim is entitled to a pro rata share of the Settlement Fund less notice and administrative costs, Class Counsel's fees and expenses, and any incentive award the Court may award. Dkt. 200-1, Agr. ¶ 4.2.1. The Settlement is completely non-reversionary— all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. *Id.* ¶ 4.2.6. Class Members with known addresses or who submit approved claims are expected to receive $100 or more. Dkt. 200-2, Broderick Decl. ¶ 10.

Plaintiff respectfully requests that the Court approve attorneys' fees of $3,500,000 and costs of $73,420.69, as well as a $10,000 incentive award for Plaintiff Abante. As explained below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested incentive award is comparable to other TCPA cases and should be approved.

## IV. LEGAL STANDARD FOR ATTORNEY'S FEE DECISIONS

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at

---

[5] The Settlement Administrator's reverse-lookup on the Class List has identified corresponding name and address information for all but 711 of the Settlement Class comprised of 53,743 unique cell phone numbers. Dkt. 200-5, Peak Decl. ¶ 12. Class Members with a known address will be mailed a settlement check directly, while those without a known address will have the opportunity to submit a claim for payment under the Settlement. Dkt. 200-1, Agr. ¶ 4.2.4.

the start of the case: The Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

The approach favored for consumer class actions in the Seventh Circuit is to compute attorneys' fees as a percentage of the benefit conferred upon the class; "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (finding percentage-of-the-fund to be the "normal practice in consumer class actions"). As other courts have explained:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition

of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage-of-fund method "provides a more effective way of determining whether the hours expended were reasonable"), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

The Seventh Circuit has also determined that, in assessing the reasonableness of requested attorneys' fee, courts should consider the ratio of "(1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (omitting administrative costs and incentive awards from analysis). The Seventh Circuit has clarified that the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

## V.  ARGUMENT

### A.  Class Counsel's Requested Fee Award Is Reasonable.

The percentage-of-the-fund method should be used here. *See Florin*, 34 F.3d at 566. Class Counsel's and Plaintiff's efforts have resulted in a $10,500,000 non-reversionary Settlement Fund that provides substantial, actual value to the Settlement Class. Class Members will have the opportunity to obtain a settlement distribution of $100 or more. Dkt. 200-2, Broderick Decl. ¶ 10. Class Counsel seek attorneys' fees of one-third of the Settlement Fund, or $3,500,000, plus out-of-pocket costs of $73,420.69. Given the result obtained for the Class, and the fact that the fee request is set at the "market range," the requested fee award is presumptively

reasonable. Further, the requested fee award of one-third of the total Settlement Fund is also consistent with the "market price" as reflected in the fees approved by judges in this Circuit in other TCPA class cases, considering the risks of non-payment, the quality and extent of Class Counsel's work on behalf of the Settlement Class, and the overall stakes of the case.

### 1. *Seventh Circuit Attorney Fee Analysis*

"Reversionary" or "claims made" settlements, where the defendant takes back any amount of unclaimed/unused settlement funds, have come under scrutiny by the Seventh Circuit. Here, however, there is a non-reversionary, "true" lump-sum cash fund of $10,500,000. Dkt. 200-1, Agr. ¶ 4.2.1. *Pearson*'s discussion of *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), highlights the difference:

> [I]n [*Boeing*] the "harvest" created by class counsel was an actual, existing judgment fund, and each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479. "Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims." *Id.* at 480 n.5. The class members [in *Boeing*] were known, the benefits of the settlement had been "traced with some accuracy," and costs could be "shifted with some exactitude to those benefiting." *Id.* at 480-81. [Unlike in *Boeing*,] … [t]here is no fund in the present case and no litigated judgment, and there was no reasonable expectation in advance of the deadline for filing claims that more members of the class would submit claims than did.

*Pearson*, 772 F.3d at 782.

In contrast, the $10,500,000, non-reversionary common Settlement Fund here presents precisely the type of "actual, existing judgment fund" cited with approval by the Seventh Circuit in *Pearson*. Further, each Class Member has "an undisputed and mathematically ascertainable claim" to their share of a lump-sum judgment. And while, in a reversionary settlement like the one addressed in *Pearson*, "class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims," *id.*, the notice

plan in *this* case (i.e., direct mail notice supplemented with a dedicated settlement website) presents no such issue because <u>no</u> money will revert to Defendant.

Here, Class Counsel's requested fee award easily satisfies the *Pearson* presumption of reasonableness: It is approximately 33.8% of the total of requested attorneys' fees plus anticipated Settlement Class benefits—well under the 50% high-mark identified as presumptively reasonable by the Seventh Circuit in *Pearson*.[6]

Class Counsel submit that this fee request is reasonable, consistent with market rates, and should be approved. *See Charvat v. AEP Energy, Inc.*, No. 13-662 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 44) (awarding one-third of common fund in TCPA case, which was 40% of common fund less administration costs); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. Feb. 15, 2015) (awarding 36% of common fund in fees for the first $10,000,000 of TCPA settlement); *Martin v. Dun & Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (awarding one-third of total payout for fees in TCPA case); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) (awarding one-third of fund in fees in TCPA case).

### 2. The risk associated with this litigation justifies the requested fee award of one-third of the common fund.

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See Sutton*, 504 F.3d at 694 (finding abuse of discretion where lower

---

[6]    $3,500,000 Fee Award ÷ (($10,500,000 Settlement Fund - $134,000 Estimated Settlement Administration Expenses - $3,500,000 Fee Award - $10,000 Incentive Award) + $3,500,000 Fee Award) = approximately 0.338.

court, in applying percentage-of-the-fund approach, refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

      Plaintiff's allegations in this case presented unique difficulties for class certification, summary judgment, and trial, which support the fee request. For example, Class Counsel took on this case without knowing the extent and scope of the calling at issue, and (based on past experience) anticipating a prolonged discovery battle over class-wide data production. Exhibit A, Burke Decl. ¶ 16.This proved to be even more involved than Class Counsel imagined. They were required to spend significant time working with third-party sub-vendors of Defendants to ensure preservation and ultimate production of class records, after which substantial *additional* time was spent processing a SQL dump of the entire Oh Agency database from SalesDialers' partner, Impiger, in order to be used in this case. Exhibit A, Burke Decl. ¶ 16. If Class Counsel hadn't so zealously sought to ensure preservation during the stay in this case, or hadn't followed through on all available leads to even *identify* Impiger, this highly critical class call data would not have been discovered, and the parties wouldn't be here seeking approval of this substantial $10.5 million settlement.[7] Exhibit A, Burke Decl. ¶ 16.

      Defendant's consent defense to the calls at issue (including based on the possibility that

---

[7]    Oh Agency's immediate dialer vendor, SalesDialers, was only able to produce lead data with undated call disposition information, rather than the *years* of detailed call and lead data Class Counsel was ultimately able to obtain from Impiger, the entity managing the back-end of the dialer. SalesDialers never told Plaintiff's counsel about Impiger; instead, Plaintiff identified Impiger through an ancillary subpoena to a telecommunications company associated with the phone number used to call Plaintiff. Exhibit A, Burke Decl. ¶ 16 n.1.

certain class members may have had a prior relationship with Allstate) also presented a hurdle to Plaintiff's ability to certify a Fed. R. Civ. P. 23(b)(3) class. Difficult legal and factual issues posing potential obstacles to class certification are factors suggestive of non-recovery, *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2017 WL 1369741, at *7 (N.D. Ill. Apr. 10, 2017), and courts have reached drastically different results on this issue. *Compare, e.g., Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, No. 12-3671, 2012 WL 6106714, at *6 (N.D. Ill. Dec. 6, 2012) (certifying TCPA class and finding no evidence that issues of consent would be individualized), *with Jamison v. First Credit Servs.*, 290 F.R.D. 92, 106-07 (N.D. Ill. 2013) (declining to certify because "issues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone"). There was thus a real risk that the Court would find that Defendants' consent evidence precluded class certification based on lack of predominating common questions. Indeed, defendants in similar TCPA cases have at times been successful at arguing that poor quality or purported inconsistencies in their *own* records from which the class may be identified preclude a finding of predominance under Fed. R. Civ. P. 23(b)(3). *E.g., Luster v. Green Tree Servicing, LLC*, No. 14-1763 (N.D. Ga. Sept. 5, 2018) (Dkt. No. 153, at 15-17) (accepting general assertions by defendant that it obtains consent in a variety of manners in finding lack of predominance, despite fact that defendant's data admittedly lacked flags it used to track consent to place the calls at issue).

Further, the law governing the calls at issue has been in a state of flux. Just three months before this case was filed, the FCC issued a major, omnibus declaratory ruling addressing numerous issues under the TCPA, including most notably the definition of an "automatic telephone dialing system" ("ATDS" or "autodialer") applicable in this case. *In re Rules & Regs.*

12

*Implementing the TCPA*, 30 FCC Rcd. 7961, at ¶¶ 10-24 (2015). Requests for appellate review were immediately filed, and the D.C. Circuit ultimately vacated part of the FCC's ruling, including as to the definition of an ATDS. *ACA Int'l v. FCC*, 885 F.3d 687, 695 & 706 (D.C. Cir. 2018). Courts are still dealing with the aftermath of the *ACA Int'l* decision, and some have interpreted *ACA Int'l* to effectively preclude much of what has traditionally been considered an autodialer in the industry and under longstanding TCPA precedent. *See Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 939 (N.D. Ill. 2018) (adopting restrictive Third Circuit interpretation of what constitutes an ATDS); *but see Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (rejecting restrictive ATDS interpretation by the Third Circuit post-*ACA Int'l*); *Espejo v. Santander Consumer USA, Inc.*, No. 11-8987, 2019 WL 2450492, at *8 (N.D. Ill. June 12, 2019) (citing *Marks* in finding dialer constitutes ATDS). The risk presented by this uncertainty in the law was not hypothetical. A key part of Defendants' argument in this case was based on their position that the SalesDialers platform Oh Agency used to call Plaintiff and the Class did not constitute an ATDS. Dkt. 87. If the Court had ruled in their favor, this would have severely curtailed or eliminated many Class Members' ability to obtain *any* redress.

Indeed, Class Counsel pursued this litigation on a contingency basis despite knowing that, even if they were ultimately successful at trial, they would likely face a lengthy appeal process or even a reduction in the amount of recovery to the Class based on the extent of statutory damages, especially where some courts view awards of aggregate, statutory damages with skepticism and either refuse to certify a class or reduce such awards on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000

13

per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *Golan v. Veritas Entm't, LLC*, No. 14- 69, 2017 WL 3923162, *4 (E.D. Mo. Sept. 7, 2017) (reducing amount of damages in TCPA case).

Class Counsel assumed the risk of this litigation, including not only the generous disbursement, apportionment, and allotment of time for each of the firms involved, but also the advancement of financial costs and expenses necessary to prosecute this matter zealously on behalf of Plaintiff and the Class. Given the lack of fee shifting under the TCPA, 47 U.S.C. § 227(b)(3), the uncertainty surrounding relevant law under the TCPA, and the unknown variables in relation to the size and nature of the class pre-suit, whether this Court would ultimately certify Plaintiff's proposed class on a litigation basis, and whether Plaintiff would ultimately be successful on the merits of his claims, the risk Class Counsel assumed was significant.). This factor supports the requested fee award.

### 3. *The requested fee comports with the contract between Plaintiff and Class Counsel, and typical contingency fee agreements in this Circuit.*

The "actual fee contracts that were negotiated for private litigation" may also be relevant considerations to a fee request *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing *Synthroid I*, 264 F.3d at 719); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (finding 40% to be "the customary fee in tort

litigation"); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"). This contingency range is further supported by the fact that the TCPA is not fee-shifting; as such, the attorney's fee model is more akin to personal injury matters than fee-shifting cases such as those brought under the Fair Credit Reporting Act, *see* 15 U.S.C. § 1681n(a), or the Fair Debt Collection Practices Act, *see* 15 U.S.C. § 1692k(a). This absence of fee shifting increases the risk to counsel, especially where, as here, the underlying statute places a cap on the amount of statutory damages available per violation to $500 or, at most, $1,500 at the Court's discretion upon a finding of willfulness, *see* 47 U.S.C. § 227(b)(3)—an amount that, in the absence of an exceptionally large number of calls or class-wide recovery, would be cost-prohibitive considering the fact that, for example, the extent of possible monetary relief under the TCPA for a single, non-willful violation barely covers the cost of filing a lawsuit.

In sum, the fees contemplated under Class Counsel's representation agreements for cases in this District and elsewhere generally fall within the one-third to 40% range. Exhibit A, Burke Decl. ¶ 14.This factor supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee ex ante, and should be awarded.

### 4. *The requested fee reflects the fees awarded in other settlements.*

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) (citation omitted).

The reasonableness of Class Counsel's fee request here is further supported by the fact that awards of one-third of a settlement fund are commonplace. Some TCPA cases where this happened are as follows: *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014)

(Martin, J.) (Dkt. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Dkt. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Dkt. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Dkt. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Dkt. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. 39) (same).[8]

Indeed, even if this Court were to consider Plaintiff's fee request in terms of the *Pearson*

---

[8]   Some other, non-TCPA cases where one-third of the entire fund was awarded, include: *Taubenfeld*, 415 F.3d at 600 (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"); *In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of the settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); *Greene v. Emersons Ltd.*, No. 76-2178, 1987 WL 11558, at *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131-32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1198-99 (S.D.N.Y. 1979) (awarding fees in excess of 50% of the settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding fees of 36% of fund).

reasonableness ratio (i.e., fee as a percentage of the fee plus total in direct benefits to the class), that 33.8% figure likewise plainly falls within the range of reasonableness in this Circuit—especially given the exceptional result achieved. *E.g.*, *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action for, inter alia, "the sum of 36% of the first $10 million"), *cert. denied*, 139 S. Ct. 923 (2019); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Dkt. 86) (37% of TCPA class settlement fund exclusive of expenses, administration costs, and service award, per Dkt. 76); *Kolinek*, 311 F.R.D. at 501 (36% of TCPA class settlement fund exclusive of notice/admin costs and service award). Plaintiff respectfully submits that the success Class Counsel secured on behalf of the Class despite the considerable obstacles and risk faced in this litigation supports the requested fee.

Class Counsel's requested fee also reflects post-*Pearson* fees approved by other courts in non-TCPA cases in this Circuit. *Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) (awarding 33 1/3% of the monetary settlement); *McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of the fund after deducting notice costs); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am., Inc.*, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the

17

fund).[9]

Consequently, the requested fee award falls in line with numerous other settlements approved as reasonable in this Circuit and it, respectfully, should be approved.

### 5.     *The quality of performance and work invested support the fee request.*

The quality of Class Counsel's performance and time invested through substantial discovery and adversarial negotiations to achieve a $10.5 million Settlement Fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of compensation, whatsoever, only achieving the Settlement after substantial litigation. They conducted a pre-suit investigation, propounded discovery, reviewed thousands of pages of documents, subpoenaed third parties, retained an expert, moved for class certification, overcame dispositive motion practice, participated in an all-day mediation in Atlanta preceded by mediation briefs, spent weeks thereafter negotiating and finalizing the settlement and ancillary papers, and otherwise zealously prosecuted this action for the benefit of the Class. Exhibit A, Burke Decl. ¶¶ 15, 17.

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. *See* Exhibit A, Burke Decl. ¶¶ 3-12, Exhibit B, Broderick Decl. ¶¶ 3-9, Exhibit C, McCue Decl. ¶¶ 5-11. And because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Given the strength of the Settlement obtained for the Class, the extensive discovery conducted, and the adversarial nature of the litigation and settlement discussions, Class Counsel respectfully submit that their experience and the quality

---

[9] *Synthroid I* also says that District Courts may look to any data from pre-suit negotiations and class-counsel auctions but such information is basically non-existent" in the TCPA context. *Kolinek*, 311 F.R.D. 501.

and amount of work invested for the benefit of the Class supports the requested fee.

c.  <strong><em>The stakes of the case further support the fee request.</em></strong>

The stakes of the case further support the requested fee award. This case involves more than Settlement Class Members who allegedly received nonconsensual robocalls from Oh Agency on 53,743 unique cellular telephone numbers. Dkt. 200-1, Agr. ¶ 2.10. The amount each Settlement Class Member is individually eligible to recover is low—between $500 and $1,500 per violation, *see* 47 U.S.C. § 227(b)(3)—and thus individuals are unlikely to file individual lawsuits, especially because the TCPA does not provide for the recovery of attorneys' fees. Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim and call records may not be available going back to the beginning of the class period, making it even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

**B.  <u>The Court Should Also Award Reasonable Reimbursement for Expenses.</u>**

It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses. *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing*, 444 U.S. at 478). The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid I*, 264 F.3d at 722; *see also Spicer v. Chi. Bd. Options Exch., Inc.,* 844 F. Supp. 1226, 1256 (N.D. Ill.

19

1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation).

Here, Class Counsel have incurred $73,420.69 in reimbursable expenses related to filing, appearances, discovery, subpoenas, data analysis, mediation, litigation, and travel. Exhibit A, Burke Decl. ¶ 19; Exhibit B, Broderick Decl. ¶ 10; Exhibit C, McCue Decl. ¶ 12. These expenses were necessary to prosecute litigation of this size and complexity on behalf of the Settlement Class, and they are typical of expenses regularly awarded in large-scale class actions, based on counsel's experience. *Id.* Accordingly, Class Counsel request that the Court approve as reasonable expenses in the amount of $73,420.69.

### C.     The Incentive Award to the Class Representative Should Be Approved.

Class Counsel also respectfully request that the Court grant a service award of $10,000 to Plaintiff Abante for the efforts on behalf of the Class of it and its principal, Fred Heidarpour. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives."). Indeed, without Plaintiff serving as Class Representative, the Class would not have been able to recover anything. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. 10-4038, 2011 WL 5547159, at *5 (N.D. Iowa Nov. 9, 2011) ("[E]ach ... plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members. The requested incentive award for each named plaintiff recognizes

20

this commitment and the benefits secured for other class members, and is thus reasonable under the circumstances of this case.").

Abante, through its principal Mr. Heidarpour, spent considerable time pursuing Class Members' claims. In particular, Mr. Heidarpour communicated with counsel to keep apprised of this matter, participated in the pre-suit investigation and discovery process, including producing documents and responding to information requests, and ultimately approved and executed the Settlement Agreement. Exhibit A, Burke Decl. ¶ 18.

Moreover, the amount requested here, $10,000, is comparable to or less than other awards approved by federal courts in this Circuit. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will*, 2010 WL 4818174, at *4 (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. 201) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. 243 ¶ 20) (awarding $30,000 incentive awards in TCPA class settlement).

## VI.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $3,500,000 in fees and $73,420.69 to reimburse their out-of-pocket costs. Class Counsel further request that the Court approve a service award to Plaintiff Abante in the amount of $10,000.

Respectfully submitted,

ABANTE ROOTER AND PLUMBING, INC.,
individually and on behalf of a class of all persons and
entities similarly situated

Dated: August 15, 2019          By:   /s/ Edward A. Broderick
                                      Edward A. Broderick
                                      Email: ted@broderick-law.com
                                      BRODERICK LAW, P.C.
                                      99 High Street, Suite 304
                                      Boston, Massachusetts 02110
                                      Telephone: (617) 738-7080

                                      Alexander H. Burke
                                      Email: aburke@burkelawllc.com
                                      Daniel J. Marovitch
                                      Email: dmarovitch@burkelawllc.com
                                      BURKE LAW OFFICES, LLC
                                      155 North Michigan Avenue, Suite 9020
                                      Chicago, Illinois 60601
                                      Telephone: (312) 729-5288

                                      Matthew P. McCue (appearance forthcoming)
                                      Email: mmccue@massattorneys.net
                                      THE LAW OFFICE OF MATTHEW P. MCCUE
                                      1 South Avenue, Suite 3
                                      Natick, Massachusetts 01760
                                      Telephone: (508) 655-1415

                                      *Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day, August 15, 2019, filed the within and foregoing

motion, memorandum, and exhibits using the CM/ECF system, which shall serve such on all

counsel of record.

                                       /s/ Edward A. Broderick
                                       Edward A. Broderick