**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ABANTE ROOTER AND PLUMBING, | ) | |
| INC., individually and on behalf of a class of | ) | Case No. 1:15-cv-09025 |
| all persons and entities similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OH INSURANCE AGENCY and | ) | Hon. Judge Jorge L. Alonso |
| ALLSTATE INSURANCE COMPANY, | ) | Hon. Mag. Judge Young B. Kim |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND .....................2

III.   THE COURT'S PRELIMINARY APPROVAL ORDER ............6

IV.   THE PROPOSED SETTLEMENT ...............................................7

     A.    The Settlement Class ...........................................................7

     B.    Settlement Relief .................................................................8

          1.    Class Member Relief: Settlement Fund ..................8

          2.    Class Representative Incentive Award ....................8

          3.    Attorneys' Fees and Costs .......................................8

          4.    Remaining Funds .....................................................9

V.     ARGUMENT ...................................................................................9

     A.    THE SETTLEMENT APPROVAL PROCESS .....................9

     B.    THE SETTLEMENT MERITS FINAL APPROVAL ...................12

          1.    The Class Representatives and Class Counsel Have Adequately Represented the Class. ..............................................12

          2.    The Settlement Was Negotiated at Arm's-Length, and There Has Been No Fraud or Collusion. ...............................................13

          3.    The Settlement Provides Substantial Relief for the Class ...................14

          4.    Diverse and Substantial Legal and Factual Risks Weigh in Favor of Settlement. .......................................................15

          5.    The Monetary Terms of this Proposed Settlement Fall Favorably within the Range of Prior TCPA Class Action Settlements. ...............17

          6.    The Settlement is an Effective and Equitable Means of Distributing Relief to the Settlement Class. ...........................18

          7.    The Attorneys' Fees Raise No Questions About the Settlement. ..........18

     C.    CLASS AND CAFA NOTICE WAS DISSEMINATED TO THE CLASS, NO OBJECTIONS WERE FILED AND THE FORM AND MANNER OF NOTICE COMPLIED WITH RULE 23 AND DUE PROCESS .............19

          1.    Direct Individual Notice Was Disseminated via U.S. Mail ...................19

          2.    Internet Notice ........................................................20

          3.    CAFA Notice ..........................................................20

          4.    Zero Objections and One Exclusion Request .......................21

D.    **CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**...............................................................................**21**

**VI.**   **CONCLUSION** ...............................................................................**23**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, No. 15-9025, 2018 WL
993883 (N.D. Ill. Feb. 20, 2018) ...............................................................................5

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. Mar. 16, 2018) ...................................................................16

*Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248 (S.D. Cal.) ............................15

*Aliano v. Joe Caputo & Sons – Algonquin, Inc.*,
No. 09-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)........................................16

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ...................................................................23

*Am. Int'l Grp., Inc. v. ACE INA Holdings*,
Nos. 07-2898, 09-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ....................10

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) .....................................................................9, 10, 11

*Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) ...................................................15

*Behrens v. Landmark Credit Union,* Case No. 17-cv-101, 2018 U.S.Dist. LEXIS
106358, at * 15 (W.D. Wis. June 26, 2018) ...........................................................12

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014).............................................................................. 3

*Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 695 (D. Minn. 1994)............................15

*Burch v. United Cable TV of Baltimore Ltd. P'ship*, 354 Md. 658, 732 A.2d 887
(Md. 1999) .............................................................................................................15

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (U.S. 2016)...........................................................................3, 5, 17

*Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392-93 (N.D. Ill. 2006) ...................................12

*Charvat and Wheeler v. Plymouth Rock Energy, LLC*, et al, USDC, EDNY, 2:15-
cv-04106-JMA-SIL ..................................................................................................9

*Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 (S.D. Cal.) ................................................15

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) .......................................................13

*Doster Lighting, Inc. v. E-Conolight, LLC,* Case No. 12-C-0023, 2015 U.S. Dist. LEXIS 78499, at * 16 (E.D. Wis. June 17, 2015) ...................................................12

*Duke v. Bank of Am., N.A.*, No. 5:12‐cv‐04009 (N.D. Cal.) .....................................15

*Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) .) .........................................................................................................................20

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) .........................................................9

*Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ...................................................................................................................15

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) ) ........................................................................................................................11

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) ..........................................................................................22

*Hale v. State Farm Mut. Auto Ins. Co.,* No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at **12-13 (S.D. Ill. Dec. 13, 2018) ) ...............................................11

*Heidarpour v. Central Payment Co.*, USDC, MD. Ga., 16-cv-01215 .............................9

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ......................................................................................14

*In re Capital One Tel. Consumer Protection Act Litig.*, No. 12-cv-10064 (N.D. Ill.) ) ...............................................................................................................................18, 19

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) .......................13

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F. Supp. 2d 320, 321 (D. Me. 2005) .................................................................................................15

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977) .........................19

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ..........................................................................9, 11, 12

*Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) .............................................................................................................................13

*Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ...................................................19

*Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 11-02467.............................................................................................................................9

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ...........................................18, 19

*Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ......................................................................................................15

*Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ........................................................................................................15

*McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) ) ..........................................21

*McKinnie v. JP Morgan Chase Bank*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) ....................13

*Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ..............................................................................................13

*Mullins v. Direct Digital, LLC,* 795 F.3d 654 (7th Cir. 2015) .........................................................................................3

*Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash.) ...................................................15

*Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002) ........................22

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007)........................................16

*Picchi v. World Fin. Network Bank*, No. 11- CV-61797 (S.D. Fla.) ...........................................15

*Sadowski v. Med1 Online,LLC*, No. 07 C 2973, 2008 WL 2224892, at *4-5 (N.D. Ill. May 27, 2008) .............................................................................................22, 23

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ...................................................................................13

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)................................................................17

*Snyder v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 80926, at * 14 (NDIL, Civil Action No. 14-cv-8461, May 14, 2019) ..........................................11

*Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ............................................................................11, 14

*Union Fid. Life Ins. Co. v. McCurdy,* 781 So. 2d 186, 188 (Ala. 2000) .....................................15

*Walter v. Hughes Communs., Inc.,* No. 09-2136 SC, 2011 U.S. Dist. LEXIS 72290, at *35-36 (N.D. Cal. July 6, 2011) ..................................................15

*Wal-Mart v. Visa,* 396 F.3d 96, 114 (2d Cir. 2005) .........................................................19

*Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) ..........................................15

*Wilson v. Everbank*, No. 14-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) ) .............................................................................................................................13

*Wright v. Nationstar Mortage LLC*, No. 14 C 10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) .................................................................................................................15

*Youngman, et al v. A&B Insurance and Financial, Inc.*, USDC, MDFL, Civil Action No. 6:16-cv-01478 ....................................................................................................9

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................................2

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................14

Fed. R. Civ. P. 26(a) ............................................................................................................6

Fed. R. Civ. P. 23(e)(1) ......................................................................................................18

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................10

Fed. R. Civ. P. 23(e)(2) .................................................................................10, 11, 16, 18

**Regulations**

47 C.F.R. § 64.1200(a)(1)(iii) .............................................................................................2

**Other Authorities**

Federal Judicial Center. *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf) ............................. 19-20

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)....................9, 10

*Manual for Complex Litig.* § 21.633 (4th ed. 2004) ............................................... 10-11

2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011) ................................................13

# I.     INTRODUCTION

After three-and-half years of litigation, dispositive motions, discovery motions, extensive discovery efforts,  and a day-long mediation with a nationally-recognized mediator followed by extensive, arm's length negotiation between counsel, Plaintiff Abante Rooter and Plumbing, Inc. ("Abante") and Defendants Oh Insurance Agency ("Oh Agency") and Allstate Insurance Company ("Allstate" or "AIC") (Oh Agency and Allstate are jointly referred to herein as "Defendants" and, with Plaintiff, as "the Parties") reached a class action settlement of this matter.[1]

The Settlement which was preliminarily approved by this Court on May 29, 2019 provides for the establishment of a $10,500,000 common fund which will be dispersed automatically (without need to file a claim) to the users or subscribers of the 53,743 Class Members with a valid mailing address—a number that, after careful work by the claims administrator overseen by Class Counsel and counsel for Defendants, currently stands at 44,974. Not a single penny of the Settlement Fund will revert to Defendants: unclaimed funds in the form of checks not cashed will be redistributed to Class Members who cash their checks is administratively feasible, at which point remaining funds will be distributed to a Court approved *cy pres* recipient. The Parties have proposed the Electronic Privacy Information Center ("EPIC").

After the Court granted preliminary approval, Notice was issued via U.S. Mail to all Settlement Class Members using contact information obtained in discovery, supplemented by three rounds of reverse lookups using three different vendors to obtain valid name and mailing addresses, which were verified by U.S. Postal Service database and (in the event of returned

---

[1] The non-opposition of Oh Agency and Allstate is limited to not objecting to certification of the Settlement Class and approval of the Settlement. Defendants do not concede or admit to any of the factual or legal assertions in the complaint and, in fact, continue to vigorously dispute them.

mail) skip tracing—reaching 83.6% of Settlement Class Members as of November 27, 2016 with individual direct notice. This means that this same 83.6% of Settlement Class Members will automatically receive payment under the Settlement—an extraordinarily high payout rate. Indeed, such a payout is *remarkably high* among sizable TCPA class settlements; in nearly every other TCPA class settlement that after involves a common fund in the high seven figures or above, only those class members who affirmatively make a claim on the common fund – usually somewhere between 1% to 10% of class members – receive a payment. Perhaps unsurprisingly, therefore, after receiving thousands of calls and hits to the Settlement website, *zero* Settlement Class Members objected to the Settlement, and *only one* requested exclusion.

Plaintiff respectfully submits that these facts demonstrate that the Court's preliminary determination that the Settlement should be approved was correct. Plaintiff now seeks final approval of the Settlement and final certification of a nationwide settlement class. Plaintiff submits that this Settlement is an excellent result for the Class, and amply satisfies all criteria for final settlement approval under Seventh Circuit law and Rule 23, as revised as of December 1, 2018. Plaintiff therefore respectfully requests that the Court grant its motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This case concerns alleged violations of the TCPA, 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any non-emergency call to a cell phone number using an automatic telephone dialing system ("autodialer" or "ATDS") or an artificial or prerecorded voice, without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). In Plaintiff Abante's case, it received multiple, automated calls to a cell phone

from Oh Agency in an effort to encourage the sale of Allstate goods or services, despite Defendants' lack of consent to do so. Dkt. 86, Am. Compl. ¶¶ 16-35.

Plaintiff filed this action over three-and-a-half years ago on October 13, 2015. The case was hard-fought: Out of the gate, Allstate[2] moved to dismiss on the basis of purported lack of subject matter jurisdiction and standing, as well as to indefinitely stay the proceedings pending the Supreme Court's resolution of *Spokeo, Inc. v. Robins* and *Campbell-Ewald Co. v. Gomez*— two long-anticipated decisions addressing Article III standing in the context of a consumer protection statute and the effect of an unaccepted offer of full individual relief on a named plaintiff's class claims, respectively. Dkt. 12.

Class Counsel submitted a response brief vigorously opposing Allstate's motion to dismiss and stay, and the Court ultimately denied Allstate's motion to dismiss without prejudice, while permitting a stay pending the Supreme Court's rulings. Dkt. 22, 23. Class Counsel— recognizing that the case might be won or lost depending on their ability to obtain records reflecting the calls at issue (records likely in the possession of some then-unknown Allstate sub-vendor who could very well purge or "lose" such critical data during the interim of the stay)— thereafter aggressively pursued efforts to ensure the proper preservation and eventual production of class data.[3] On December 1, 2015, Plaintiff moved to commence discovery as to Oh Agency

---

[2]  At the initial stage of these proceedings, the "Allstate" entity serving as a defendant was The Allstate Corporation, which was later replaced with Allstate Insurance Company on August 15, 2016. Dkt. 86.

[3]  *E.g., Leyse v. Lifetime Entm't Servs.*, No. 13-5794, 2015 WL 5837897, at *5 (S.D.N.Y. Sept. 22, 2015), *aff'd*, 679 F. App'x 44 (2d Cir. 2017) (denying class certification in TCPA action on ascertainability grounds given that "[t]here is no copy of the list of called numbers that the parties have been able to discover"); *but see Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015) (rejecting "enhanced ascertainability" requirement for class certification, and citing *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014), for the proposition that making a class contingent on a defendant's own recordkeeping "or declining to certify a class altogether, ... would create

to avoid the destruction of class member materials, Dkt. 24, which the Court granted in entering

a Preservation Order directing Oh Agency to preserve relevant data and ESI, and to obtain all

records from its agents that may be relevant to this case. Dkt. 27.

After efforts to confirm Oh Agency's compliance with the Court's order failed to address

the preservation concerns to Class Counsel's satisfaction, on January 12, 2016 and February 18,

2016, Plaintiff moved to compel Oh Agency's compliance with the Court's prior discovery order

that, while ultimately denied, put Oh Agency on further notice of its expected document

preservation obligations. Dkt. 28, 30, 38, 41. More importantly, this motion practice led to the

Court entering its March 7, 2016 order granting Plaintiff leave to subpoena Oh Agency's dialer

vendor, SalesDialers, in order to ensure preservation of its relevant data, to be produced to and

secured by Oh Agency's counsel during the interim of the stay. Dkt. 42. Further, after the

subpoena meet-and-confer process with SalesDialers revealed that its data did not include the

bulk call detail or dialer records for the calls at issue, Class Counsel sought leave to issue a

preservation subpoena to SalesDialers' telecommunications company, Flowroute, which the

Court granted on April 26, 2016. Dkt. 45, 47.

With the Supreme Court having decided *Spokeo* and *Campbell-Ewald*, the Court lifted

the stay on May 18, 2016, Dkt. 48, and Class Counsel were able to access the subpoena response

materials of Flowroute and SalesDialers. Neither contained the comprehensive call detail records

critical to Plaintiff's case, but Flowroute's response permitted Class Counsel to identify yet

another third party, Impiger Technologies Inc. ("Impiger"), as being associated with the calls at

issue—indeed, as their investigation would show, Impiger was the back-end service provider for

---

an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing
that it could avoid legal responsibility for the full scope of its illegal conduct").

Oh Agency's SalesDialers dialer. Class Counsel subpoenaed Impiger and its principal, and after substantial back-and-forth over the course months—and motion practice with Defendants[4]—they were able to secure not just basic call detail records, but _the entire Oh Agency SalesDialers database_ containing, inter alia, lead data, prerecorded message data, and dialer call records.[5]

The parties also engaged in extensive motion practice. On June 3, 2016, Defendants filed motions to dismiss for lack of subject matter jurisdiction and constitutional standing after the Supreme Court's decisions in _Campbell-Ewald_ and _Spokeo_. Dkt. 50, 53. The parties fully briefed the motions, Dkt. 65, 69, 72, although they were ultimately deemed moot after Plaintiff amended its complaint on August 15, 2016. Dkt. 86, 106. Defendants renewed their motions to dismiss on August 29, 2016 and September 9, 2016, and the parties again briefed the issues, along with new arguments bolstered by Class Counsel's analysis of preliminary data from SalesDialers and Impiger. Dkt. 96, 102, 120, 125, 126, 130, 135, 137, 142, 143, 144, 147. Class Counsel also filed a motion for class certification on October 4, 2016, as a further stop-gap against Defendants' standing-based arguments, although the Court denied it without prejudice prior to full briefing in light of the ongoing status of the case. Dkt. 111, 124. On February 20, 2018, the Court denied Defendants' motions to dismiss, and the case was permitted to proceed. Dkt. 150; _Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency_, No. 15-9025, 2018 WL 993883 (N.D. Ill. Feb. 20, 2018).

Apart from the above and other third parties Class Counsel subpoenaed in this action, the Parties engaged in extensive first-party discovery, which included exchanging multiple sets of

---

4  This production was made pursuant to a limited lift of a subsequent stay the Court entered pending ruling on Defendants' motions to dismiss, which the Court granted at Plaintiff's request over Defendants' objection. Dkt. 108, 117, 123.

5  This production was literally a "dump" of all data Impiger had for the account associated with Oh Agency; thus, while extensive, it took a substantial amount of Class Counsel's and Plaintiff's expert's time to reverse-engineer the data into a usable structure analyzed for use in the case.

written discovery requests and thousands of pages of responsive materials. Dkt. 208-1, Burke Decl. ¶ 15. Class Counsel also retained and worked extensively with expert Jeffrey A. Hansen in anticipation of renewed class certification briefing, and furnished a comprehensive Fed. R. Civ. P. 26(a)(2)(B) report to defense counsel on July 18, 2018, which, inter alia, used the Structured Query Language ("SQL") database produced by Impiger to identify what would ultimately become the Settlement Class subject to the Parties' Agreement. *Id.*

With several depositions scheduled and class certification briefing on the horizon, the Parties decided to discuss the possibility of settlement. On December 17, 2018, the Parties participated in an all-day mediation with Hunter R. Hughes, III, Esq. in Atlanta, Georgia, preceded by the exchange of mediation position papers. *Id.* ¶ 17. The Parties succeeded in achieving an agreement in principle at the mediation, and for weeks thereafter continued to negotiate and finalize the terms of the proposed Settlement. *Id*; Dkt. 189. This was followed by further modifications and efforts to address issues raised by the Court at initial presentment, before the Court ultimately preliminarily approved the Settlement on May 29, 2019. Dkt. 208-1 ¶ 17; Dkt. 200, 207.

## III.    THE COURT'S PRELIMINARY APPROVAL ORDER

On April 17, 2019, the Court held a hearing on Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. (Dkt. 195, 196). At the initial preliminary approval hearing, the Court directed the Parties to: 1) take additional steps to locate the small subset of the Class whose addresses are not known, 2) make a number of changes to the Class Notice and Preliminary Approval Order, 3) alter the requirements for Class Members to lodge objections and take an appeal, 4) submit revised declarations in support of Plaintiff's Motion for Preliminary Approval complying with 28 U.S.C. § 1746, and 5) file the Class List under seal.

On May 10, 2019, Plaintiff moved for preliminary approval of the Parties' Amended Class Action Settlement Agreement. The Amended Settlement was modified to address the issues raised by the Court, modifying the Settlement and exhibits to conform to the Court's directives. At the point of preliminary approval of the Amended Settlement, KCC, the proposed Settlement Administrator, had engaged in reverse-lookup work, and reported that the number of Class Members whose addresses cannot be located has been reduced to 711 out of a Settlement Class associated with 53,743 unique cell phone numbers. (Dkt. 200-5; KCC Decl. ¶ 12.) In order to help capture Class Members who may not receive direct notice, the Parties also added a publication notice element, which calls for internet advertising targeted toward the same audience as the calls that are the subject of this case: small businesses in California, including those with unknown addresses. On May 29, 2019, the Court granted preliminary approval to the Amended Settlement. Dkt. 207. As is detailed below, Class Counsel and the Settlement Administrator have successfully completed the notice program approved by the Court and merits final approval.

## IV.   THE PROPOSED SETTLEMENT

### A.   The Settlement Class

The proposed Settlement would establish a "Settlement Class" for settlement purposes only, defined as:

> All persons in the United States (i) to whom Oh Insurance Agency made a call for the purpose of encouraging the purchase of Allstate goods or services (ii) to a cellular telephone number (iii) using SalesDialers (iv) on or after April 19, 2013, up to and including February 21, 2017, limited to calls to telephone numbers on the Class List. The Class List is comprised of the users or subscribers of the 53,743 unique cell phone numbers listed therein.

(Dkt.. 200-1; Agr. ¶ 3.1.)

7

### B. Settlement Relief

#### 1. Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $10,500,000 Settlement Fund, which will be used to pay: (1) cash settlement awards to Settlement Class Members; (2) settlement administration expenses of $166,539.23); (3) court-approved attorney's fees of $3,500,000 (one-third of the total amount of the Settlement Fund) and attorney expenses of $73,420.69 (*see* Motion for Attorneys' Fees Dkt. 208 and Supplemental Memorandum Dkt. 218); and (4) a court-approved incentive award to the Class Representative, for which Plaintiff's counsel have sought $10,000. (*Id.*).

If all of the attorneys' fees, expenses, incentive award, and notice and administration expenses are approved as requested, KCC estimates that the average Settlement Class Member payment would be $149.79. Declaration of Jay Geraci, ¶ 23, attached hereto as Exhibit 1. The Settlement provides for a potential second distribution for any funds remaining due to uncashed settlement distribution checks to those Class Members that cashed their first distribution checks, to the extent administratively feasible. (Dkt. 200-1 ¶ 4.2.6.)

#### 2. Class Representative Incentive Award

If approved by the Court, the Plaintiff will receive an incentive award of $10,000 from the Settlement Fund. (Agr. ¶ 15.2.) This award will compensate Plaintiff for its time and effort and for the risk undertaken in prosecuting this case.

#### 3. Attorneys' Fees and Costs

Class Counsel have applied to the Court for an award of attorneys' fees of $3,500,000, in addition to out-of-pocket expenses of $73,420.69. (Dkt. 208) As Class Counsel addressed in their fee application, an award of attorneys' fees and costs will compensate Class Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be

performed in administering distributions and answering class member inquiries.

### 4. Remaining Funds

Any amount remaining in the Settlement Fund after paying class members, notice and administration expenses, and any fee award and incentive award, will be distributed to a Court-approved *cy pres* recipient. (Dkt. 200-1 ¶ 4.2.6.) The Parties propose The Electronic Privacy Information Center ("EPIC"). (*Id.*)[6] This will only include the amount remaining from uncashed checks, to the extent further distribution to the Class is not administratively feasible. (*Id.*)

## V. ARGUMENT

### A. THE SETTLEMENT APPROVAL PROCESS

As the Seventh Circuit recognizes, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980) (noting that "[i]n the class action context in particular there is an overriding public interest in favor of settlement") (citations, quotations, and internal marks omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 11:41 (4th ed. 2002) (citing cases). The traditional means for handling claims like

---

6 EPIC is a non-profit in Washington, D.C. focused on consumer privacy issues that has been approved as a *cy pres* recipient in at least three TCPA class action settlements. *Heidarpour v. Central Payment Co.*, USDC, MD. Ga., 16-cv-01215 on May 4, 2017; *Charvat and Wheeler v. Plymouth Rock Energy, LLC*, et al, USDC, EDNY, 2:15-cv-04106-JMA-SIL on July 31, 2018; *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 11-02467 (D. Md. Feb. 12, 2015); and *Youngman, et al v. A&B Insurance and Financial, Inc.*, USDC, MDFL, Civil Action No. 6:16-cv-01478 (August 9, 2018).

those at issue here – individual litigation – would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Newberg § 11.41; *Am. Int'l Grp., Inc. v. ACE INA Holdings*, Nos. 07-2898, 09-2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation and internal citation omitted).

Approval of a class action settlement is a two-step process. *Armstrong*, 816 F.2d at 314. At the preliminary approval stage, the question for this Court is whether the settlement falls within a range of possible approval and therefore warrants dissemination of notice apprising class members of the proposed settlement. *Id.* Specifically, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties'' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the Court preliminarily approves the class action settlement, it then proceeds to the second step in the review process – the fairness hearing. *Id.*; *Manual for Complex Litig.* § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. Rule 23, as revised as of December 1, 2018, "sets forth a list of points a court must consider in determining whether a proposed class action settlement is fair, reasonable, and adequate." *Snyder v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 80926, at * 14 (NDIL, Civil Action No. 14-cv-8461, May 14, 2019). These are:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "These considerations overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at **12-13 (S.D. Ill. Dec. 13, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997)).

Those factors are satisfied here.

### B.     THE SETTLEMENT MERITS FINAL APPROVAL

#### 1.     The Class Representatives and Class Counsel Have Adequately Represented the Class.

As is set forth above, the Parties reached their settlement only after extensive discovery and motion practice. In light of this history, Plaintiff had a complete picture of the case, and did everything possible to get the best possible result for class members. On the basis of these efforts, the case was highly developed.

In addition, "[a] plaintiff must show that: (1) the representative does not have conflicting or antagonistic interests compared with the class as a whole; (2) the representative is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously." *Doster Lighting, Inc. v. E-Conolight, LLC,* Case No. 12-C-0023, 2015 U.S. Dist. LEXIS 78499, at * 16 (E.D. Wis. June 17, 2015) (quoting *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392-93 (N.D. Ill. 2006) (internal quotation marks omitted)). "In deciding whether to approve the settlement, the court is entitled to give consideration to the opinion of competent counsel." *Behrens v. Landmark Credit Union,* Case No. 17-cv-101, 2018 U.S.Dist. LEXIS 106358, at * 15 (W.D. Wis. June 26, 2018) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (internal quotation marks omitted)).

Here, Plaintiff's claims are aligned with the claims of the other class members. Abante thus had every incentive to vigorously pursue the claims of the class, as it has done by remaining actively involved in this matter since its inception, participating in discovery and remaining involved in the settlement process. In addition, Plaintiff retained the services of law firms with extensive experience in litigating consumer class actions, and TCPA actions in particular.

Plaintiff and its counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the members of the class. Plaintiff also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to a contested class certification and trial.

### 2. The Settlement Was Negotiated at Arm's-Length, and There Has Been No Fraud or Collusion.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also McKinnie v. JP Morgan Chase Bank*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) ("[C]ounsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator for the Seventh Circuit Court of Appeals. These factors suggest that the settlement is fair and merits final approval.").[7]

The Settlement Agreement resulted from good faith, arm's-length settlement negotiations over many months, including an in-person mediation session before Hunter Hughes, II, Esq. in Atlanta, Georgia. Plaintiff and Defendant submitted detailed mediation submissions to Mr. Hughes and to one another setting forth their respective views as to the strengths of their cases.

---

[7] *See also Wilson v. Everbank*, No. 14-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

13

Accordingly, the parties negotiated their settlement at arm's-length, and absent any fraud or collusion.

### 3.    The Settlement Provides Substantial Relief for the Class

Rule 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." *See also Synfuel Techs,* 463 F.3d at 653 ("The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.") (internal quotes and citations omitted); *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs.") (citations omitted).  The relief this Settlement provides meaningful and substantial relief, particularly given the facts and circumstances of this case.  And the Settlement's terms ensure all Settlement Class Members will be treated equitably.

The Settlement provides substantial relief to the Class. It requires Defendants to pay $10,500,000.00 cash into a Settlement Fund, out of which all Settlement Class Members will *automatically* receive their *pro rata* share of cash payments. Agreement § 4.2.4. The Settlement Fund is non-reversionary, ensuring that nearly all monetary benefits will go to the approximately 44,974 Settlement Class Members who received Notice at a valid mailing address; none of the Settlement Fund will return to Defendants. The Settlement Administrator estimates that each Class Member will receive more $149. Geraci Decl., ¶ 23. This is an excellent result when measured against 25 years of TCPA settlements, in which a significantly smaller percentage of

class members generally receive notice and make a claim on the common fund.[8] This is exponentially better than the typical settlement in which typically 1% to 10% of class members receive a payment. *Walter v. Hughes Communs., Inc.,* No. 09-2136 SC, 2011 U.S. Dist. LEXIS 72290, at *35-36 (N.D. Cal. July 6, 2011) (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 370 F. Supp. 2d 320, 321 (D. Me. 2005) (two percent submission rate); *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 695 (D. Minn. 1994), as amended 858 F. Supp. 944 (rejecting settlement where similar settlement had only a three percent redemption rate); *Strong v. Bellsouth Telecomm., Inc.,* 173 F.R.D. 167, 169 (W.D. La. 1997) (4.3 percent claims rate); *Burch v. United Cable TV of Baltimore Ltd. P'ship*, 354 Md. 658, 732 A.2d 887 (Md. 1999) (9.7 percent response rate to claims process); *Union Fid. Life Ins. Co. v. McCurdy,* 781 So. 2d 186, 188 (Ala. 2000) (observing that only 113 of 104,000 class members submitted claims, for a rate of 0.1 percent).

### 4. Diverse and Substantial Legal and Factual Risks Weigh in Favor of Settlement.

The costs, risks, and delay of trial and appeal are also relevant factors as to the approval

---

[8] *See, e.g., Wright v. Nationstar Mortage LLC*, No. 14 C 10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016), *appeal filed* ($12.1 million for 2,343,988 class members); *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016), *appeal filed* ($34 million for more than 32 million class members); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797 (S.D. Fla.) ($7.9 million for 3 million class members); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) ($24.15 million for 7,792,256 class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ($17.1 million for 4,546,293 class members); *Duke v. Bank of Am., N.A.*, No. 5:12‑cv‑04009 (N.D. Cal.) ($32,083,905 for approximately 7,723,860 class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV 1284 (S.D. Cal.) ($11,665,592.09 for 2,684,518 class members); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) ($39,975,000 for 9,065,262 class members); *In re Capital One Tel. Consumer Protection Act Litig.*, No. 12-cv-10064 (N.D. Ill.) ($75,455,098 for 16,645,221 class members); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ($12.2 million for 47 million class members); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248 (S.D. Cal.) ($9 million for 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash.) (approving $5.5 million for 18.1 million class members).

of a proposed settlement. Fed. R. Civ. P. 23(e)(2)(C)(i).

Plaintiff continues to believe that its claims against Defendants have merit, and that it could make a compelling case if its claims were tried. Nevertheless, Plaintiff would face a number of difficult challenges if the litigation were to continue. Apart from the numerous affirmative defenses asserted in their Answers, Defendants consistently argued that the dialing system used did not qualify as an ATDS, particularly since the decision of the United States Court of Appeals for the District of Columbia in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. Mar. 16, 2018), which overturned a 2015 declaratory ruling from the FCC on the definition of an automatic telephone dialing system under the TCPA. In addition, AIC strongly contested that it could be held vicariously liable for the acts of Oh Agency.

Further, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Indeed, the Agreement was achieved despite significant risk of no recovery for class members. During the life of this case, there was a Supreme Court case that, if resolved in the

favor of the Defendant, could have eliminated or diminished TCPA class actions all together. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). And in the aftermath of *ACA Int'l*, courts have continued to issue at times disparate rulings in relation to the TCPA litigation, raising further insecurity for the class' ultimate ability to obtain relief on a nationwide, class basis. The risk of continued litigation thus supports preliminary approval of the proposed Settlement.

Litigation here would also be lengthy and expensive if this action were to proceed. Although the Parties have engaged in significant discovery, extensive motion work, including finishing the briefing of motions for summary judgment and class certification, remain. Expert discovery would also need to be completed. Realistically, it could be more than a year before the case would proceed to trial, and the appeals process may further delay any judgment in favor of Class Members. The Settlement, instead, avoids these risks and provides immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). As such, the costs, risks, and delay inherent in continued litigation support final approval of the Parties' proposed Settlement.

### 5. The Monetary Terms of this Proposed Settlement Fall Favorably within the Range of Prior TCPA Class Action Settlements.

The Settlement requires Defendant to pay $10,50,000 into a Settlement Fund. On a per-class member basis, this amounts to a payout of more than $149 per class member (after deduction for the requested incentive award, attorneys' fees and costs). This compares favorably to other TCPA class actions settlements, and Courts have approved other TCPA class action

settlements that achieved much smaller *pro rata* monetary recoveries.[9]  Moreover, Class

Members will receive real monetary rewards from this settlement.  KCC estimates that class

members will receive over $149.  Thus, class members will still receive a sum that compares

favorably to similar TCPA settlements that have claims procedure across the class, paying only a

small fraction of class members.[10]

The Settlement provides substantial relief to Class Members without delay, particularly in

light of the above risks that Class Members would face in litigation.

### 6.    The Settlement is an Effective and Equitable Means of Distributing Relief to the Settlement Class.

The Settlement treats each class member in precisely the same way. *See* Fed. R. Civ. P.

23(e)(2)(C) & (D) advisory committee's note (identifying, among potential "[m]atters of

concern," whether "the scope of the release may affect class members in different ways that bear

on the apportionment of relief").  Every class member will receive the exact same relief, in return

for the exact same release as to Defendant.  No one was favored, disfavored, or otherwise treated

differently from anyone else.

### 7.    The Attorneys' Fees Raise No Questions About the Settlement.

Plaintiff has requested $3,500,00 in fees, along with $73,420.69 in expenses.  Dkt. No.

208, at 1.  Class Members had the opportunity to review and object to the requested fees, and no

one did so.  Moreover, the fee request falls well within the range of requests for similar

---

[9] *See, e.g.*, *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ($4.31 per class
member); *Kolinek.*, 311 F.R.D. at 493 (N.D. Ill. 2015) ($1.20 per class member).

[10] *See, e.g.*, *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 789 (granting final approval where
each claimant would be awarded $39.66);*Kolinek*, 311 F.R.D at 493–94 (granting final
approval where class members each stood to receive $30).

settlements and will befit the substantial risks Plaintiff's Counsel undertook in pursuing these

claims, their efforts on behalf of the Settlement Class, and the resolution they have achieved.[11]

## C.      CLASS AND CAFA NOTICE WAS DISSEMINATED TO THE CLASS, NO OBJECTIONS WERE FILED AND  THE FORM AND MANNER OF NOTICE COMPLIED WITH RULE 23 AND DUE PROCESS

The Notice program approved by the Court (Dkt. No. 207) has been fully and

successfully implemented by the parties and the Court-approved Claims Administrator, KCC in

accordance with the Court's direction. *See* Geraci Decl. ¶¶ 2-20. Within 60

days of the judgment becoming final, should the Court grant final approval to the Settlement,

payments will be automatically issued to all Class Members with valid mailing addresses.


The polestar for assessing the adequacy of notice, whether through the lens of Rule 23 or

constitutional due process, is "reasonableness."  *Wal-Mart v. Visa,* 396 F.3d 96, 114 (2d Cir.

2005).  Reasonableness is, in turn, "a function of anticipated results, costs, and amount

involved."  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977).  Both

the manner of dissemination and the forms of the notice ensured "the best notice that is

practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  But "even in Rule 23(b)(3)

class actions, due process does not require that class members actually receive notice." *Juris v.

Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (collecting cases).

### 1.      Direct Individual Notice Was Disseminated via U.S. Mail

Direct mail notice was successfully delivered to at least 83.6% of class members. Geraci

Declaration, Ex. 1, ¶ 16. The notice program in this case far exceeds the minimum due process

requirements. This plan *__far__* exceeds the benchmark of 70% notice reach endorsed by the Federal

---

[11] *Cf., e.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781,787 (N.D. Ill. 2015) (awarding 36% of the first $10 million of the fund);  *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (N.D. Ill. 2015) (awarding 36% of net settlement fund).

Judicial Center. *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf), at page 27. Moreover, KCC set up an administered a settlement website, which contained all relevant documents and notice forms to any class members who researched the website. *See,, e.g.*, *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving notice by postcard directing class members to website).  The Settlement website received 70,295 visits. Geraci Decl., Ex, 1 hereto, ¶ 18.

### 2. Internet Notice

KCC additionally purchased 8,000,000 impressions to be distributed targeted to the largely California based class of individuals and small businesses, including class members with previously unknown addresses. A total of 8,8628,470 impressions were delivered, further supporting the effectiveness of the internet notice program as individuals responded to the targeted banner ads. Geraci Decl., Ex, 1 hereto, ¶ 16

### 3. CAFA Notice

On April 22, 2016, the Claims Administrator also sent a total of sixty-four (64) notifications regarding the Parties initial settlement to the appropriate State and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, to all 50 States, as well as all territories and to the U.S. Attorney General. Geraci Decl. ¶ 3.

Once the Parties reached their Amended Settlement, on June 13, 2019 again sent a total of sixty-four (64) notifications regarding the Parties initial settlement to the appropriate State and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, to all 50 States, as well as all territories and to the U.S. Attorney General. Geraci Decl. ¶ 5.

KCC received no response to the CAFA Notice Packets sent on April 22, 2019 and June 13, 2019.

### 4.    Zero Objections and One Exclusion Request

After Class Notice was disseminated, the Claims Administrator received one request for exclusion by the October 15, 2019 deadline set by the Court. *Id.* ¶ 21 and Ex, J thereto. No objections to the Settlement or to Class Counsel's request for attorneys' fees, costs, and service awards for Class Representatives have been received by Class Counsel or docketed by the Clerk of Court. Geraci Decl. ¶ 22.

### D.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

For settlement purposes, Plaintiffs respectfully request that the Court certify the Settlement Class defined in the Agreement. Dkt 200-1, Amended Agreement § 3.1. In its preliminary approval order, the Court provisionally certified the Settlement Class for settlement purposes, finding that it met the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3). Dkt. No. 207 ¶ 5. The Court directed Notice of the proposed Settlement to inform Settlement Class Members of the existence and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and place of the formal fairness hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. No objections were received, nor has anything occurred since preliminary approval that should alter this Court's conclusions. Accordingly, the Settlement Class should be certified under Federal Rule of Civil Procedure Rule 23.

### 1. The Rule 23(a) Requirements are Satisfied

The numerosity requirement of Rule 23(a) is satisfied because the combined Settlement Class consists of users and subscribers of 53,473 unique phone numbers. *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity). The commonality requirement is satisfied because there are

21

many questions of law and fact common to the Settlement Class that center on Allstate and Oh

Insurance Agency's common practice of using an automated dialing system to call Settlement

Class Members on their cell phones. *See Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D.

211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the

[commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009

WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (finding the that common questions supported

certification of TCPA class action). The typicality requirement is satisfied because Plaintiffs'

TCPA claims, which are based on Allstate and Oh Agency's systematic use of automated calls to

cell phones, arise out of the same "event, practice or course of conduct that gives rise to the

claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206

F.R.D. at 213. The adequacy of representation requirement is satisfied because Plaintiff's

interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See*

*G.M. Sign,* 2009 WL 2581324, at *6. Further, Plaintiff is represented by qualified and competent

counsel who have extensive experience and expertise in prosecuting complex class actions,

including TCPA actions. *See id.*

### 2. The Rule 23(b)(3) Requirements are Satisfied

The predominance requirement of Rule 23(b)(3) is satisfied because common questions

present a significant aspect of the case and can be resolved for all Settlement Class Members in a

single adjudication. Common issues predominate here because the claims of the class members

arise from Allstate and Oh Agency's common practice of using an automated dialing system to

contact consumers on their cell phones without their consent. *See Sadowski v. Med1 Online,*

*LLC*, No. 07 C 2973, 2008 WL 2224892, at *4-5 (N.D. Ill. May 27, 2008) (finding common

issues such as "how numbers were generated from Defendant's database and whether

Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant elected who was to receive the [ ] faxes"). Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Moreover, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Sadowski*, 2008 WL 2224892, at *5 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'"). For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order substantially in the form as the proposed order attached hereto as Exhibit 2:  (1) granting final approval to the proposed Settlement as fair, reasonable, and adequate; (2) confirming its prior preliminary certification of the Settlement Class; (3) finding that Notice was issued to the Settlement Class satisfying Rule 23 and due process, and to state and federal officials satisfying 28 U.S.C. ¶ 1715; (4) excluding the timely received exclusion from the Settlement Class; (5) granting Class counsel's request for attorneys' fees, costs, and service awards for Class

Representatives; and (6) dismissing with prejudice all claims against Defendants and entering

final judgment pursuant to Rule 54(b) in the form attached hereto as Exhibit 3.

Respectfully submitted,

ABANTE ROOTER AND PLUMBING, INC.,
individually and on behalf of a class of all persons and
entities similarly situated

Dated: November 1, 2019                By:   */s/ Edward A. Broderick*
    Edward A. Broderick
    Email: ted@broderick-law.com
    BRODERICK LAW, P.C.
    99 High Street, Suite 304
    Boston, Massachusetts 02110
    Telephone: (617) 738-7080

    Alexander H. Burke
    Email: aburke@burkelawllc.com
    Daniel J. Marovitch
    Email: dmarovitch@burkelawllc.com
    BURKE LAW OFFICES, LLC
    155 North Michigan Avenue, Suite 9020
    Chicago, Illinois 60601
    Telephone: (312) 729-5288

    Matthew P. McCue
    Email: mmccue@massattorneys.net
    THE LAW OFFICE OF MATTHEW P. MCCUE
    1 South Avenue, Suite 3
    Natick, Massachusetts 01760
    Telephone: (508) 655-1415

    *Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 1, 2019, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Edward A. Broderick*
Edward A. Broderick
